SARAH BROWN AND OTHERS, *vs.* SARAH R. RAMSEY AND OTHERS.—*December* 1848.

A testator, after various dispositions of portions of his property, directed, that after the death of his wife, the whole of his estate, real, personal and mixed, should be sold, "and the money arising therefrom to be disposed of as follows:" one hundred dollars to a charitable purpose, "and after which sum is paid, the *residue* is to be *equally divided and paid* to the following named persons, viz:  To the children of my sister, *H B,* deceased, *Sarah, Levi, Deborah, Jeremiah* and *Slater.*  To the children of my sister, *R R, Elisha, Joel, Sarah* and *Susannah.*  To the children of my brother, *E E,*

deceased, *George* and *John*. To the children of my brother, *J E*, deceased, *Isaac*, two shares, *Samuel J*, and the children of his daughter, *S K*, deceased, namely, *John* and *Hannah*, share and share alike, with the exception of *Isaac's* two shares, aforementioned." HELD:

That the words, "share and share alike, with the exception of *Isaac's* two shares," are not to be confined to the last sentence, but apply to the whole clause, and that the children here mentioned are to take *per capita*, and not *per stirpes*. By dividing the fund into as many equal parts as there are legatees, counting *Isaac twice*, the proportion of each legatee is ascertained, and the distribution designed by the testator effected.

APPEAL from the Court of Chancery.

A petition was filed in chancery, on the 14th of September 1842, by *Slater Brown*, alleging the death of a certain *Joseph England*, of *Cecil* county, in 1828, seized of real and personal estate, leaving a last will and testament, duly executed on the 20th of October 1827; (a copy of which is exhibited with the petition,) of which the petitioner, together with *Joseph Townsend* and *Jeremiah Brown* were appointed executors; that his two co-executors have died, and that, although the contingency has happened, upon which the executors were authorized by the will to sell the real estate therein mentioned, yet as doubts exist whether the testator designed that the surviving executor should exercise the power of sale, which is expressly confided to their joint discretion, the interference of this court is asked to decree a sale, and appoint a trustee for that purpose, and to distribute the proceeds, under the direction of the court, according to the provisions of said will.

The testator by his will, referred to in this petition, and filed with it, bequeathed to his wife, *Hannah England*, one-half of all his personal estate, and during her natural life, one-half of the income of his real estate, with the use of certain parts of his dwelling house, and other privileges. A dwelling house, situated in the city of *Baltimore*, he devises to one *Sarah Galbraith*; the will then proceeds thus:

"*Item.* I give and bequeath to *Micah Oldham*, daughter of my sister, *Margaret Rowles*; to *Ann*, *Sarah* and *Elizabeth*, daughters of my brother *Elisha England*, by his former wife, and by his latter one, *Isaac*, *Mary*, *Joseph*, *Elisha*, *Samuel* and *Hannah*; to *Hannah Haines Kirk*, daughter of my bro-

ther, *John England*, deceased, the sum of one dollar each, to be paid to them within one year after my decease.

" *Item.* after the decease of my beloved wife, I do hereby order and direct, that the whole of my estate, real, personal and mixed, be sold to the best advantage, either at public or private sale, as my executors, hereafter named, may judge most proper, and the money arising thereon, to be disposed of as follows : the sum of one hundred dollars I give and bequeath to the asylum, lately instituted by the *Society of Friends*, near the city of *Philadelphia*, and after which sum is paid, the residue is to be equally divided and paid to the following named persons, viz :

" To the children of my sister *Hannah Brown*, deceased, *Sarah*, *Levi*, *Deborah*, *Jeremiah* and *Slater*.

" To the children of my sister *Rachel Reynolds*, *Elisha*, *Joel*, *Sarah*, *Susanna*.

" To the children of my brother, *Elisha England*, deceased, *George* and *John*.

" To the children of my brother, *John England*, deceased, *Isaac*, two shares, *Samuel J. England*, and the children of his daughter, *Sarah Kirk*, deceased, namely, *John* and *Hanna*, share and share alike, with the exception of *Isaac's* two shares, aforementioned.

" *Lastly*, I do hereby nominate, constitue and appoint my cousin, *Joseph Townshend*, of the city of *Baltimore*, my brother-in-law, *Jeremiah Brown*, and my nephew, *Slater Brown*, executors of this my last will and testament, with full and absolute power to sell and convey every part of my estate aforementioned, in legal form, hereby revoking and annulling all former wills by me made.

" In witness whereof, I have hereunto set my hand and affixed my seal, this twentieth day of the ninth month, 1827.

JOSEPH ENGLAND. (Seal.)"

Upon this petition, the chancellor, (BLAND,) on the 16th of September 1842, passed a decree, directing a sale of the farm on which the testator lived at the time of his death, and a frame dwelling house in the city of *Baltimore*, and appointed a trustee for that purpose, and directed him to " bring into this

court the bonds taken on the sale, together with the purchase money, when received, to be applied, under the chancellor's direction, after deducting costs,'' &c.

The first sale of the property, under this decree, was set aside by the chancellor, and a resale ordered, which was accordingly made and finally ratified by the chancellor on the 16th of February 1846, and the proceeds brought into court by the trustee, and the cause referred to the auditor, for the purpose of stating an account distributing the same.

On the 4th of June 1846, the auditor made his report accompanied by two accounts, A and B. Account A was stated on the assumption that the testator meant, that each set of children referred to should receive one-fourth of the residue of the net proceeds, to be divided between them in the manner stated in his will, which the auditor submits is the true construction thereof. Account B was stated on the assumption, that the devisees ought to take share and share alike, with the exception of *Isaac England,* to whom two shares were assigned.

Exceptions to account A were filed by *Sarah Brown, Levi Brown, Deborah Brown, Jeremiah Brown, Slater Brown, Isaac England, Samuel J. England, John Kirk* and *Hannah Kirk,* who approved of account B. But the chancellor, on the 10th of November 1846, overruled these exceptions, and ordered account A. to be ratified and confirmed, and directed the trustee to apply the proceeds accordingly. From this order the above named exceptants appealed to this court.

The cause was argued before Dorsey, C. J., Spence, Magruder, Martin and Frick, J.

By John C. Groome and H. McCullough for the appellants, and

By Constable for the appellees.

Magruder, J. delivered the opinion of this court.

In the case now before us, the late chancellor, by his order, dated 10th of November 1846, ratified an account reported by the auditor, in which he distributed, in the manner therein

stated, a fund then in that court, and brought into it by one of its decrees. The appellants allege, that in the distribution of that fund they received a smaller proportion than that to which they are entitled. Whether there be any ground for this complaint depends upon the construction of one of the clauses of the will, which produced this controversy.

It appears by the record, that one *Joseph England*, by his will, bearing date the 20th day of 9th month 1827, after many dispositions of portions of his estate, directed a sale to be made of a part thereof when his wife died, and the clause in regard to the distribution of it, which gives rise to the controversy, is in these words: " After the decease of my beloved wife, I do hereby order and direct that the whole of my estate, real, and personal, and mixed, be sold to the best advantage, either at public or private sale, as my executors, hereafter named, may judge most proper, and the money arising therefrom to be disposed of as follows : the sum of one hundred dollars, I give and bequeath to the asylum, lately instituted by the *Society of Friends* near the city of *Philadelphia*, and after which sum is paid, the *residue* is to be *equally divided and paid* to the following named persons, viz.:

To the children of my sister, *Hannah Brown,* deceased, *Sarah, Levi, Deborah, Jeremiah and Slater.*

To the children of my sister, *Rachel Reynolds, Elisha, Joel, Sarah, Susanna.*

To the children of my brother, *Elisha England,* deceased, *George* and *John.*

To the children of my brother, *John England,* deceased, *Isaac,* two shares ; *Samuel J. England,* and the children of his daughter, S*arah Kirk,* deceased, namely, *John* and *Hannah,* share and share alike, with the exception of *Isaac's* two shares *afore*mentioned."

There is no controversy in regard to the amount of the fund. The question is, what proportion is each legatee to receive ? The auditor in the account which the chancellor ratified, assumes that the testator meant that each set of children should receive one-fourth of the residue of the net proceeds, to be divided between them, (each set of children.) This construc-

tion, the chancellor adopts, and a different distribution would give to the parties appealing, a larger sum than they thus obtain, hence this appeal.

" Wills," it has been said, " are hard to be understood ; often, without legal advice, they are unintelligible, and with it, are of doubtful construction. Many testators fail to make themselves understood." This may be the misfortune of the present testator, or of some of the objects of his bounty. With all the consideration we have been able to give to this will, we cannot find in it the intention that this fund shall be distributed as it has been in chancery.

Some of the testator's brothers and sisters were dead. Those yet living were to receive no part of this fund. It appears by the will, that there had been, at least, one sister, (*Margaret*,) who had a daughter still in being, and yet is not admitted to a participation in this fund. With respect to the brothers and sisters thus spoken of in this clause of the will, and among whose children he distributed the fund, other clauses of the will show, that they had other children than those here provided for. Nothing like a distribution *per stirpes* is so manifest as to furnish an apology for adding or expunging words, which may be essential in order to make such a distribution. This fund is distributed by one clause of the will, and the words, "share and share alike, with the exception of *Isaac's* two shares," are not by any means to be confined to the last sentence, but seem to be introduced, because when the clause was commenced, it had not occurred to him, that " *equally divided*," was not correct, if *Isaac* was to have two shares; or it is very possible, that his determination to give to *Isaac* two shares was formed after this clause was commenced, and after, perhaps, he had (such is often the case,) excluded some, whom, when he said, " equally divided," he intended to name in the clause.

If the testator, in naming the subjects of his bounty, had not also mentioned their parents, it is scarcely to be doubted that such a distribution as the chancellor has made of the fund, would be contrary to the testator's declared intent. So if instead of inserting the names of their parents before the objects

of his bounty, the clause had said, "to *Sarah, Levi,*" &c., naming all of them, (the children of my sister *Hannah*,) to *Elisha, Joel,* and other legatees, in the second sentence, (children of my sister *Rachel Reynolds,*) and in the same way, had given to his other legatees, this certainly would not have indicated an intention, that the fund should first be divided into four parts, and then each of those four parts to be distributed as the chancellor has directed. Yet it is thought this change in the structure of the sentences, would not vary the disposition of the property. Much greater liberties are often taken with the words which are to be found in a sentence of a will, but by no transposition of its words, can this will be made to direct a division of the fund, first into four equal parts, and then another division of each of those parts, into as many parts as are necessary to make the persons named in each sentence, with the exception of the last, take the same amount.

"The residue is to be equally divided," and for what purpose ? The will does not say, with a view to another division, but to be "paid to the following named persons." One division then, (not two,) is to ascertain the sum, which each of those persons is to receive. We are then to look to the number of persons, who are named in this clause, as objects of the testator's bounty; we are to notice whether there be any who are to receive more than the others, and learning from the clause, that *Isaac* is to receive two shares, or twice as much as any other, and with respect to all the shares, that they are to take "share and share alike," that what is given to them is to be "*equally divided*" among them, and then by dividing the fund into as many equal parts as there are legatees, counting *Isaac* twice, we get the proportion of each. Such, it seems to the court, is the manner in which the testator designed that this fund should be distributed.

The counsel for the appellee, has given us a reference, to the case of *Alder vs. Beall,* 11 *Gill & John.,* 175. In that case the will was, that the residue of the testator's estate, should be divided "between the children," (not some, but all of them,) "of his sister *Ann,* and the children (all of them,) of his sister *Penelope,* and it was such a bequest as the testator might make

without any knowledge of the names or the number of them."

No intention is expressed that the estate be equally divided, or that the legatees should take it share and share alike. It was a bequest to the children of one sister, and a bequest to the children of another sister, and one class of children, (although each of that class is to have a joint interest in so much as is bequeathed to that class,) is to have no interest in the part given to the other class.

DECREE REVERSED, AND ACCOUNT (B) RATIFIED.