## Joseph Farmer & a. *v.* Daniel H. Kimball, & a.

Under a residuary devise to the testatrix' cousins and the children of her mother's cousins, to be equally divided among them, the devisees take *per capita* unless something in the will indicates a different intention on the part of the testatrix.

And so, under such a devise "unto my cousins and to the children of my mother's cousins to be equally divided between them."

Petition for Partition. The plaintiffs and defendants all claim under the will of Betsy Farmer, dated January 5, 1856 :—

Betsy Farmer was the daughter of Benjamin Farmer, and her mother's maiden name was Kimball, and her maternal grandfather's name was Collins.

She died unmarried, leaving no brother or sister, nor any descendant of a brother or sister surviving. She left real estate that was appraised at $32,940.00, and personal estate appraised at $5.795.33.

Eighteen thousand five hundred and ninety dollars of the real estate was derived from her mother's side, and fourteen thousand three hundred and fifty dollars from her father's side. The personal estate mainly she had herself accumulated. No real or personal estate ever came to the testatrix or her mother or grandmother from the Collins ancestors. She left no surviving aunt and only one uncle, the younger and half brother of her father. She had at the time of her decease twenty cousins, all on the Farmer side, and about one hundred and twenty-nine children of her mother's cousins ; twenty-nine of them of the Kimball blood, and the others of the Collins blood, who were her nearest relatives on her mother's side.

Her cousins on the Farmer side and the children of her mother's cousins resided in different parts of the country, and some of her cousins and most of the children of her mother's cousins were personally unknown to her.

The specific devises and bequests of the will given to individuals by name were mostly the relatives on the mother's side—one on the father's side, and some to strangers.

The specified real estate given by the will to "the mother's cousins' children on the Kimball side" was about equal to that given "unto cousins excepting the children of Daniel Farmer."

In conclusion she gave as follows :

"I give, bequeath and devise unto my cousins and to the children of my mother's cousins all the rest, residue and remainder of my estate, real, personal or mixed, wheresoever found or however situated, to be divided equally between them after the payment of my just debts and legacies."

The real estate remaining to be disposed of under this clause is of the value of about twelve or thirteen thousand dollars.

The plaintiffs claim as cousins of the deceased on the Farmer side, and the defendants as children of her mother's cousins.

A copy of the will is to be made a part of the case. Gilman Currier, who is not a professional man, wrote the will.

The plaintiffs contend that the cousins on the father's side and repre-

senting his side take as a class one-half of the residuary estate, and the children of her mother's cousins the other half as a class representing the mother's side. The defendants contend that the cousins and the children of the mother's cousins take *per capita* in equal shares.

The following is a copy of the will :—

*In the name of God, Amen.*

I, Betsy Farmer, of Newton, in the county of Rockingham, and State of New Hampshire, do make, publish and declare this my last will and testament, and herein dispose of all my worldly estate in manner following, to wit :

First, I order my executors herein named to pay all my debts and funeral charges as soon as may be after my decease.

Second, I give and devise to Daniel H. Kimball, of East Kingston, his heirs and assigns, my tract of land in Newton adjoining Thomas Currier, known as the George place.

Third, I give and devise to Joseph Currier, of Newton, his heirs and assigns, a tract of land lying on the southerly side of the new road (so called) adjoining Peter Tukesbury's and Moses M. Tukesbury's heirs' land, called the meadow.

Fourth, I give and devise unto Amos Kimball, of Newton, his heirs and assigns, five acres of land, to be set off from the south part of my land called the Collins lot.

Fifth, I give and devise unto my mother's cousins' children on the Kimball side, their heirs and assigns, the homestead place on which I now live, bounded westerly on the road leading from South Hampton to East Kingston Falls.

Sixth, I give and bequeath unto Merream Collins, of Danville, her heirs and assigns, two hundred dollars.

Also, I give and bequeath unto Elizabeth F. Chase, wife of John C. Chase, her heirs and assigns, two hundred dollars.

I give and bequeath unto Benjamin F. Carter, of Newburyport, his heirs, one hundred dollars.

I give and bequeath to Betsy Jenness, wife of Benjamin Jenness, of Deerfield, and her heirs, three hundred dollars.

I give and bequeath unto Sally Cate, the wife of Francis Cate, of Deerfield, and her heirs, two hundred dollars.

I give and bequeath and devise unto my cousins, the children of Daniel Farmer excepted, my land known as the Collins place not herein disposed of; also my tract known as Cedar Swamp ; also my salt marsh ; it is my will that my uncle, Daniel Farmer, shall have an equal share with each of my cousins in the above mentioned lands and marsh, to them and their heirs.

I give and bequeath unto Frederick Farmer, of Dorchester, Mass., two hundred dollars to him, his heirs and assigns.

I give and bequeath to James S. Bridge, his heirs or assigns, three hundred dollars.

I give and bequeath unto the Baptist Society for foreign missions two thousand dollars.

I give and devise unto my cousins and to the children of my mother's cousins all the rest, residue and remainder of my estate, real, personal or mixed, wherever found and however situated, to be divided equally between them after the payment of my just debts and legacies.

Lastly, I hereby constitute and appoint Gilman B. Currier and Thomas J. Goodwin, of South Hampton, executors of this my last will and testament, hereby revoking all former wills by me made.

In witness whereof, &c.

*Christie*, for petitioners.

The only question now for consideration arises upon the construction of the residuary clause in said will, in and by which the residue of the testatrix' estate is given to, and "to be divided equally between her cousins and the children of her mother's cousins."

Upon the language of this clause of the will and all the facts stated, the plaintiffs contend and claim that the cousins on the father's side, and representing his side, take, as a class, one half of the residuary estate, and the children of the mother's cousins the other half, as a class, representing the mother's side. The defendants contend that the cousins and the children of the mother's cousins take *per capita* in equal shares.

The counsel for the petitioners make the following suggestions as favoring and tending to sustain their construction of said clause in the will.

1. The word "*between*" is not appropriately or commonly used to signify a division or distribution "*among*" more than two individuals or classes. If the testatrix had intended that the residue of her estate should go in equal shares to the individuals answering to the two general descriptions named, the usual and proper word to show that intention would have been "*among*," and not "*between*." This argument, however, standing alone, cannot be regarded as conclusive; for the word "*between*," when the general intention appears to require it, has been sometimes held to have the same sense as "*among*." *Williams* v. *Yates*, 1 C. P. Cooper, 177; *Dowding* v. *Smith*, 3 Beav. 541.

2. No individuals are named here as the objects of the testatrix' bounty; from which it is to be fairly inferred that she had in mind the two classes as representing, one the father's, and the other the mother's side of the family; that she regarded each class collectively as entitled to one equal share of the residue of her estate.

3. The residue is given *unto* my cousins *and to* the children of my mother's cousins; the repetition of the word *to* or *unto* before the second of the two classes or descriptions of persons has been regarded as an indication that the intention was to give equally "*between*" the two classes or descriptions of persons, and not equally "*among*" the persons of which they are composed—that *classes* and not *individuals* were contemplated in the will.

4. The fact that the estate was derived partly on the father's side and

partly on the mother's side and nearly equally from each, after deducting the several individual legacies and devises to relatives on the mother's side, is not to be overlooked in searching for the intention of the testatrix. She would naturally feel inclined to divide her estate between her relatives on the two sides in reference to the source from which it had been derived, regarding not individuals but the relatives on one side as representing the father's side, and the relatives on the other side as representing the mother's side of the family.

5. The testatrix evidently bore in mind, throughout the will, the claims of her relatives on the *two sides* as *two classes*, one representing her father and the other her mother. This idea pervades the whole will. One specific devise is made to the children of her mother's cousins on the Kimball side without naming any of them; another specific devise is made to her cousins, who, when the uncle is included instead of his children, represent the father's side. In these cases there is no room for doubt, that she regarded the *classes* and not the individuals, and it is fair to infer that she had the same intention when she speaks of the same classes or relatives in the residuary clause.

6. Mother's cousins' children were her nearest relatives on the mother's side, and, after excepting Daniel Farmer, cousins were her nearest relatives on the father's side. Mother's cousins' children, regarded as individuals, were not so nearly related to the testatrix as cousins; and, as individuals, cannot be supposed to have had so strong claims on the testatrix' bounty. If she had had only cousins and children of mother's cousins, the cousins, under the statute of distributions, would have taken all. But the children of mother's cousins, though more remote, were her nearest relatives on the mother's side, and when she looked for a *class* to represent the mother's side, they were the next of kin and the legal and proper representatives of that side of the family. We may thence infer that the gift was made to the children of the mother's cousins on the one side in their representative and collective and not individual character, and so of the cousins; and that she meant to give one half to one class as representing her father's side, and the other half to the other class as representing the mother's side.

7. To settle the construction of the residuary clause, we must look to the whole will to discover what was the real intention of the testatrix; and this intention must control technical and arbitrary rules, which would otherwise prevent the real intention from being carried into effect. Following this maxim and looking to the language of the residuary clause and the other provisions of the will in connection with the condition and origin of the estate and the family relatives of the testatrix, we submit that the children of the mother's cousins *as a class*, will take one half of the residue, and the cousins, as the *other class*, the other half.

8. We would further suggest that, upon the construction contended for by the defendants' counsel, the children of the mother's cousins representing the mother's side would take about thirteen fifteenths of the whole twelve or fifteen thousand dollars worth of residuary estate, while the cousins, representing the father's side, would take only the other

*two* fifteenth parts thereof, and the mother's cousins' children, of the Collins blood, from whose ancestors none of the testatrix' estate was ever derived, would take ten fifteenths of the residuary estate. We submit that upon all the facts, this could not have been the intention of the testatrix.

*I. A. Eastman*, for petitionees.

BARTLETT, J.   If, in this case, the residue of the estate had been given to the cousins and the children of the mother's .cousins, to be equally divided among them, the devisees would have taken *per capita*, unless something in the will indicated a different intention on the part of the testatrix.   2 Jarm. *111, and n., (Perkins Ed. ;) *Blackler* v. *Webb*, 2 P. Wms. 385 ; *Lincoln* v. *Pelham*, 10 Vesey 176 ; *Longmore* v. *Broom*, 7 Ves. 125 ; *Barnes* v. *Patch*, 8 Ves. 604 ; *Davenport* v. *Hanbury*, 3 Ves. 259 ; *Lugar* v. *Harmar*, 1 Cox 250 ; *Smith* v. *Stratfield*, 1 Mer. 358 ; *Weld* v. *Bradbury*, 2 Vern. 705 ; *Abrey* v. *Newman*, 17 L. & Eq. 125 ; *Mattison* v. *Tanfield*, 3 Beavan 132, & n. ; *Walker* v. *Griffin*, 11 Wheat. 374 ; *Collins* v. *Hoxie*, 9 Paige 88 ; *Exparte Leith*, 1 Hill Ch. 153 ; *Bunner* v. *Storm*, 1 Sand. Ch. 362 ; *Kean* v. *Roe*, 2 Harrington 118 ; *Henderson* v. *Womack*, 6 Ird. Eq. 441 ; *Harris* v. *Philpot*, 5 Ib. 324 ; *Hill* v. *Spruill*, 4 Ib. 246 ; *Bivens* v. *Phifer*, 2 Jones (Law) 438 ; *Cheeves* v. *Bell*,1 Jones Eq. 237 ; *Gilliam* v. *Underwood*, 3 Ib. 100 ; *Patterson* v. *Patterson*, 3 Ib. 208 ; *Feinster* v. *Tucker*, 5 Ib. 74 ; *Rogers* v. *Brickhouse*, 5 Ib. 303 ; *Burgin* v. *Patten*, 5 Ib. 426 ; *Howard* v. *Howard*, 30 Ala. 391 ; *McMaster* v. *McMaster*, 10 Gratt. 275 ; *Brown* v. *Ramsay*, 7 Gill 347 ; *Smith* v. *Ashurst*, 34 Ala. 208 ; (20 D. 284, 36 ;) *Nichols* v. *Denney*, 37 Miss. 59, (20 D. 284, 38 ;) *Dupont* v. *Hutchinson*, 10 Rich. Eq. 389, (19 D. 199, 48.)

This construction is not controlled by the use of the word "between," *Abrey* v. *Newman*, 17 L. & Eq. 126 ; *Lenden* v. *Blackmere*, 10 Simons 626 ; *Warrington* v. *Warrington*, 2 Hare 54 ; *Williams* v. *Yates*, 1 C. P. Cooper 177 ; or by the repetition of the preposition, *Dowding* v. *Smith*, 3 Beav. 540 ; *Blackler* v. *Webb*, 2 P. Wms. 383 ; *McMaster* v. *McMaster*, 10 Gratt. 275 ; *Brown* v. *Ramsey*, 7 Gill 347 ; or, by the fact that the devisees are not each named individually, *Blackler* v. *Webb*, 2 P. Wms. 383 ; *Lee* v. *Lee*, 39 Barb. 173 ; *Roper* v. *Roper*, 5 Jones Eq. 17 ; and from many of the cases already cited it appears that a difference in the degree. of kinship like that in the present case will not prevent the application of the general rule.

It is unnecessary to determine whether the mere fact of the prior mention in the will of the devisees as classes is to be regarded as a sufficient indication of an intention so to treat them in a subsequent clause ; see *Gilliam* v. *Underwood*, 3 Jones Eq. 102 ; *Lockhart* v. *Lockhart*, 3 Ib. 205 ; *Pardue* v. *Givens*, 1 Ib. 312 ; *Low* v. *Carter*, 2 Ib. 378 ; *Bivens* v. *Phifer*, 2 Jones (Law) 436 ; though perhaps in several such cases it will be found that other circumstances aided in the conclusion, for here such a rule would fail to support the claim of the

petitioners. The will contains no prior general division of the legatees into two classes, of which the cousins are to form one, and the children of the mother's cousins the other. In the devise to the cousins the children of Daniel are excepted, while he takes a share equal to that of each of the other devisees ; and the children of the mother's cousins are not made devisees as a class, for the numerous children of the Collins blood are not included in the fifth clause of the will. See *Doe* v. *Joinville*, 3 East. 175.

But little stress can be laid on the facts as to the sources of the property ; see *Prescott* v. *Carr*, 29 N. H. 453 ; and besides no general intent to distribute the property among the representatives of the branches from which it was derived can be inferred, for the numerous children of the cousins of the Collins blood take under the residuary clause ; and no general intent to divide the property equally between the paternal and maternal branches of the family of the testatrix can be inferred, because these Collins cousins are not included in the fifth clause of the will. In general, where a class are intended to take as representing some person, they take together in his stead ; *Tucker* v. *Boston*, 18 Pick. 162 ; *Bretton* v. *Lithulier*, 2 Vernon 653 ; *Davenport* v. *Hanbury*, 3 Ves. 260, (Sumner's note ;) *Mattison* v. *Tanfield*, 3 Beavan 132 ; *Miller's Appeal*, 35 Penn. 323 ; *Ortt's Appeal*, Ib. 267 ; *Fissell's Appeal*, 27 Penn. 55 ; *Alder* v. *Beall*, 11 G. & I. 123 ; *Spiney* v. *Spiney*, 2 Ird. Eq. 103 ; *Levering* v. *Levering*, 14 Md. 30 ; *Bool* v. *Mix*, 17 Wend. 119 ; but here is nothing sufficiently indicative of an intention of the testatrix that the cousins should take as representatives of any one in the paternal branch, or the children of the mother's cousins as representing any of her family, and therefore the devisees take in their own right. *Weld* v. *Bradbury*, 2 Vernon 705 ; *Davenport* v. *Hanbury*, 3 Vesey 260, Sumner's Note ; *Northey* v. *Strange*, 1 P. Wms. 343 ; *Bowers* v. *Porter*, 4 Pick. 210 ; *Tomlin* v. *Hatfield*, 12 Simons 167.

Upon the whole, we think that any inference of an intention to divide the residue by classes is merely conjectural, and quite too uncertain to prevent the application of the well settled general rule ; *Lincoln* v. *Pelham*, 10 Vesey 176 ; *Kean* v. *Roe*, 2 Harrington 120 ; and we are of opinion that the individuals falling within the description of the devisees in the residuary clause take *per capita*.

                                                            *Case discharged.*