ALLIE L. WOOLEY v. JOHN T. HAYS et al., Appellants.

Division One, December 30, 1920.

1. **WILL:** "**To My Lawful Heirs:**" **Per Capita or Per Stirpes.** Testator, a bachelor, having three brothers and seven nephews and nieces by three deceased sisters, by his last will gave and bequeathed his property "to my lawful heirs, share and share alike." *Held,* that he devised the property *per capita* and not *per stirpes,* and that the three brothers and the seven nephews and nieces took a one-tenth interest each in the estate.

2. ————: **Interpretation: Oral Testimony.** A will is required to be in writing, and therefore parol testimony as to what the testator said as to his intention, either before or after the will is made,

Wooley v. Hays.

or as to what the scrivener meant by the words used, is incompetent.

3. ————: ————: **Lawful Heirs: Latent Ambiguity.** The use of the words "to my lawful heirs" in the will devising testator's property creates no latent ambiguity. The word "lawful heirs" are certain in their meaning; in fact, the Statutes of Descents and Distribution fixes and defines their meaning.

4. ————: ————: **Circumstances.** The circumstances surrounding the testator when he had made his will, such as the amount and character of his property, his relations with his kindred who are the natural objects of his bounty and their situation, are admissible in evidence for the purpose of placing the court as nearly as may be in the testator's shoes, so that his true intent and meaning, shown by his will and viewed as he viewed it, can be ascertained and followed.

5. ————: ————: **Aided By Other Cases.** Precedents are of little value in the interpretation of a will, because each will and the circumstances under which it was made are generally different from every other will and the circumstances surrounding its maker. But the primary meaning of certain words and phrases by repeated ruling may become so fixed as to compel the conclusion reached in other cases that they were used in the will in hand in their established sense.

6. ————: **"To My Lawful Heirs:" "Share and Share Alike:" Class.** It is well established that where the testator devises his property to "my heirs," or to "my lawful heirs," without more, they take *per stirpes* or *per capita* the same as if the testator had died intestate. But where the devise is to the testator's heirs or lawful heirs, "share and share alike," or where other words importing an equal division are used, the "heirs" or "lawful heirs," although related in different degrees of consanguinity to the testator, as brothers and sisters and nieces and nephews, are treated as constituting but one class of devisees, who will take *per capita*. unless by the will they are separated into different classes, or it uses other expressions showing a different intent.

7. ————: ————: ————: **Intent: Statute.** The statute (Sec. 583, R. S. 1909) commanding that "all courts and others concerned in the execution of last wills shall have due regard to the directions of the will, and the true intent and meaning of the testator," requires the court to disregard mere technicalities and artificial rules of construction, and to follow the real spirit and intent of the testator, as shown by the whole will and the circumstances; but it also requires that every word and phrase of the will be given effect, lest its intent and meaning be missed, and unless the court is satisfied that no special effect was intended to be

given to a particular word or phrase and its use was a mère formality signifying nothing, or its meaning was qualified or neutralized by other provisions, it must be given its usual legally estabished meaning.

8. ——: ——: ——: ——: **Circumstances.** Where testator's three brothers were old men and financially well provided for, and the children of three of his deceased sisters were young and comparatively poor, and the grandchildren of another deceased sister named Barber were well provided for, it cannot be held that the sole purpose of his will, by which he devised all his property to "my lawful heirs, share and share alike, except John W. Barber and William F. Barber, heirs of my sister Clarissa, who I give the sum of one dollar each, they having been amply provided for," was to simply disinherit the Barber boys, and to permit his property to descend otherwise *per stirpes*, but not *per capita*, although he made no special legacies; but by devising his property generally to his lawful heirs, share and share alike, his intention was to attach to the words used their usual legally established meaning, which was that the three brothers and the seven children of the three deceased sisters were placed in one class, and each took an equal portion or, one-tenth of his estate.

Appeal from Nodaway Circuit Court.—*Hon. John M. Dawson*, Judge.

AFFIRMED.

*Cook & Cummins* for appellants.

(1) The evidence of H. W. Montgomery as to the instructions given to him by the testator for drawing the will and as to the declarations made to him by the testator as to what disposition he intended to make of his property, was all competent and was therefore improperly excluded. Riggs v. Meyers, 20 Mo. 243. It is well settled law that for the purpose of determining the object of the testator's bounty or the subject of disposition or the quantity of interest intended to be given by his will, the court may inquire into every material fact relating to the person who claims to be interested under the will and the property which is claimed as the subject of disposition, and to the circumstances of the testator and of his family and affairs, for the purpose of enabling it

to identify the property or thing intended by the testator, or to determine the quantity of interest he has given by his will. Wigram on Wills, 51; Creasy v. Alverson, 43 Mo. 13; Thomson v. Thomson, 115 Mo. 56; Gordon v. Burris, 141 Mo. 602; Willard v. Darrah, 168 Mo. 660. In every case the court is entitled to be placed in possession of all the information which is available of the circumstances of the estate and family of the testator when he made his will, to the end that the court may be in his situation as nearly as may be and may interpret and understand the will as he would if he were living and his will be not defeated by the palpable error of the scrivener. McMahan v. Hubbard, 217 Mo. 638-40; Willard v. Darrah, 168 Mo. 667. In the last mentioned case for the purpose of identifying a devisee parol evidence of the scrivener, who wrote the will, was admitted to solve a latent ambiguity, produced by extrinsic evidence in the application of the terms of the will to the object of the testator's bounty. Its effect is not to establish an intention different in essence from that expressed in the will, but to let in light to effectuate the will and true intent and meaning of the testator. Willard v. Darrah, 168 Mo. 672; McMahan v. Hubbard, 217 Mo. 638. The intent of the maker in either a deed or will, should govern rather than technical rules of the law. His intent is the pole star of construction. Johnson v. Calvert, 260 Mo. 442; R. S. 1909, sec. 583. Many cases at the present time are breaking away from the strict and inflexible rule and are allowing the use of evidence to show in what sense the testator used the words. 14 Encyc. Evidence, 511; Kohl v. Frederick, 115 Iowa, 517; Robb's Estate, 37 S. C. 19; Smith v. Kimball, 62 N. H. 606; Gould v. Chamberlain, 184 Mass. 115; Hoffner v. Custer, 237 Ill. 64; Wolfe v. Hathaway, 70 Atl. (Conn.), 645; In re Wheeler, 32 App. Div. 183, 52 N. Y. Supp. 943. (2) A latent ambiguity arises when the writing upon its face appears clear and unambiguous but there is some collateral matter which makes the meaning uncertain. 17 Cyc. 676. Parol or other extrinsic evidence is always admissible to explain a

latent ambiguity in any written instrument. The reason given for the rule is that as the ambiguity is raised by extrinsic evidence, the same kind of evidence must be admitted to remove it. 17 Cyc. 676-7; Schreiber v. Osten, 50 Mo. 516. (3) In the construction of wills, though we are not to disregard authority of decisions as to the interpretation, the construction of them is so much governed by the language, arrangement and circumstances of each particular instrument, which is usually very unskillfully and incoherently drawn, that adjudged cases become of less authority and are of more hazardous application than decisive upon any other branch of the law. 4 Kent, Com. 534, 535; Lomax v. Lomax, 6 L. R. A. (N. S.) 954. That rule permits the use of extrinsic evidence to explain a latent ambiguity after it is made to appear. Mudd v. Cunningham, 181 S. W. 388-9; Riggs v. Meyers, 20 Mo. 243; Willard v. Darrah, 168 Mo. 670; McMahan v. Hubbard, 217 Mo. 640. (4) The true intent and meaning of the testator can be best ascertained by the courts and those concerned in the execution of wills by putting themselves, so far as may be in the place of the testator and reading all his directions therein contained in the light of his environment at the time it was made. Hall v. Stephens, 65 Mo. 670; Noe v. Kern, 93 Mo. 373, Suydam v. Thayer, 94 Mo. 33; Munro v. Collins, 95 Mo. 33; Small v. Field, 102 Mo. 104; Long v. Tims, 107 Mo. 512; Murphy v. Carlin, 113 Mo. 117.

*Shinabarger, Blagg & Ellison* for respondents.

(1) The court did not err in excluding and rejecting the testimony of the scrivener, H. W. Montgomery, as to the instructions given him by the testator, and the testimony of James T. Hays as to declarations of the testator made shortly after the execution of the will, because all this testimony was hearsay, and tended to contradict and impeach the written will and to substitute therefor the parol testimony of these two witnesses in violation of Sec. 537, R. S. 1909, which prescribes the formalities to be observed in the execution of a will. (a) The intention of the testator must be gathered from the four

corners of the will itself, without recourse to extrinsic evidence,, unless the language of the instrument is ambiguous, or provokes an ambiguity when applied to the external facts—and even then the evidence is admissible only to explain the will, and not to contradict it. 30 Am. & Eng. Ency. Law (2 Ed.), pp. 673-81; 40 Cyc. 1427-36; Gibson v. Gibson, 219 S. W. (Mo.) 565; Middleton v. Dudding, 183 S. W. (Mo.) 443; Griffith v. Witten, 252 Mo. 641; Brown v. Tuschoff, 235 Mo. 456; Lehnhoff v. Theine, 184 Mo. 357; Roberts v. Crume, 173 Mo. 579; Krechter v. Grope, 166 Mo. 391; Webb v. Hayden, 166 Mo. 46; Hurst v. Von De Veld, 158 Mo. 247; McMillan v. Farrow, 141 Mo. 62; Garth v. Garth, 139 Mo. 452; Mersman v. Mersman, 136 Mo. 256; Nichols v. Boswell, 103 Mo. 157; Thompson v. Ish, 99 Mo. 170; Hall v. Stephens, 65 Mo. 677; Ashbury v. Shain, 191 Mo. App. 672; State ex rel. v. McVeigh, 181 Mo. App. 582; Snyder v. Toler, 179 Mo. App. 381; Missouri Baptist Sanitarium v. McCune, 112 Mo. App. 337. (b) The will contained no ambiguities, patent or latent. (2) The expression "lawful heirs" means the same as heirs at law or heirs. Hockaday v. Lynn, 200 Mo. 471; Harrell v. Hagan, 147 N. C. 111, 12 Am. St. 539; Wool v. Fleetwood, 136 N. C. 460, 67 L. R. A. 444; Stisser v. Stisser, 235 Ill. 207. (a) The word heirs has a definite meaning. In Re Cupples Estate, 199 S. W. (Mo.) 556, 557; Tevis v. Tevis, 259 Mo. 37; Waddle v. Frazier, 245 Mo. 401; Rosier v. Graham, 146 Mo. 360; Jarboe v. Hay, 122 Mo. 354. (b) And when used in a will the word "heirs" is to be given its usual legal significance except where the context compels some other interpretation. 30 Am. & Eng. Ency. Law (2 Ed.), p. 671; 40 Cyc. 1459; Gillilan v. Gillilan, 212 S. W. 355; Tevis v. Tevis. 259 Mo. 37; Eckle v. Ryland, 256 Mo. 447; Brown v. Tuschoff, 235 Mo. 449; Roberts v. Crume, 173 Mo. 572; Records v. Fields, 155 Mo. 321; Drake v. Crane, 127 Mo. 103; Emmerson v. Hughes, 110 Mo. 630; Maguire v. Moore, 108 Mo. 273; Walker v. Peters, 139 Mo. App. 688. (c) The fact that two living persons, John W. Barber and William F. Barber, are excepted from the class desi-

nated by the will as "lawful heirs," does not call for an interpretation of the word "heirs" different from its usual legal significance. Minot v. Harris, 132 Mass, 529; Keeler v. Exrs. of Keeler, 39 Vt. 556. (d) A devise to "heirs" or the members of one designated class "share and share alike" entitles the individuals indicated to take *per capita,* or equally. 30 Am. & Eng. Ency. Law (2 Ed.), pp. 731-3; 40 Cyc. 1490 1492-4; Allison v. Chaney, 63 Mo. 284; Preston v. Brant, 96 Mo. 552; Maguire v. Moore, 108 Mo. 267; Rixey v. Stuckey, 129 Mo. 377; Garesche v. Levering Co., 146 Mo. 436; Records v. Fields, 155 Mo. 324; In re Mays, 197 Mo. App. 555; Bisson v. West Shore Railroad, 143 N. Y. 125; Kling v. Schnellbecker, 107 Iowa, 636; Johnson v. Brodine, 108 Iowa, 594; Knutson v. Vidders, 126 Iowa, 511; Kean's Lessee v. Hoffecker, 2 Harr. (Del.) 103, 29 Am. Dec. 342; Farmer v. Kimball, 46 N. H. 435, 88 Am. Dec. 219; Allen v. Allen, 13 S. C. 512, 36 Am. Rep. 722; Dukes v. Faulk, 37 S. C. 255, 34 Am. St. 745; Mooney v. Purpus, 70 Ohio St. 57. (3) Even if the will be regarded as ambiguous or of doubtful meaning, only such extrinsic evidence was admissible in aid of its construction as would throw light on the situation and surroundings of the parties and thus enable the court to scan the will from the testator's point of view. The testator's intention must be ascertained from the will, scrutinized in the light of surrounding circumstances, and if from these a meaning is not discoverable such meaning cannot be supplied by testimony as to what the testator said his intentions were. Mudd v. Cunningham, 181 S. W. (Mo.) 386; Snyder v. Toler, 179 Mo. App. 376.

SMALL, C.—Appeal from the Circuit Court of Nodaway County.

In this suit for partition, there is but one question for our determination, and that is, whether, by the will of John G. Hays, bachelor, deceased, he devised the lands to his three brothers and the children of three of his deceased sisters, *per capita* as contended by plaintiff, or *per stirpes,* as contended by defendants. The de-

ceased had a fourth sister, Clarissa, who was also deceased, and left two children, John W. and William F. Barber, to whom the testator gave the sum of one dollar, "they having been amply provided for." There is no controversy as to this provision of the will.

The will to be construed, omitting the formal introduction and the last clause appointing the executors, is as follows:

"After all my lawful debts are paid and discharged, the residue of my estate, real and personal, I give and bequeath to my lawful heirs, share and share alike. Except John W. Barber and William F. Barber, heirs of my sister, Clarissa, who I give the sum of one dollar each. They having been amply provided for."

The defendants in their answer set up that it was the intention of the testator that the three brothers and the children of the three deceased sisters should take *per stirpes;* that the will was written during the last illness of the testator, and within a few hours of his death. That W. H. Montgomery, a banker and friend of the deceased, drew the will and was not familiar with the technical meaning of legal phrases. That the testator informed the scrivener that he desired his estate equally divided among his brothers and sisters, except as to his deceased sister, Clarissa, whose heirs were to have one dollar each, because they were already provided for. That said scrivener undertook to follow the testator's instructions and to so word the will as to divide the estate in six equal parts among the testator's three brothers and three deceased sisters, and that said scrivener believing that the three living brothers and three deceased sisters would, in law, constitute the lawful heirs of the testator, and for the purpose of carrying out the instructions of the testator wrote the will in the words hereinbefore set out, and the testator executed said will in the confident belief that the meaning of the words of his will was such as, in law, would carry out his intention to divide his estate into six equal parts, one share to each of his three living brothers and one

share to the respective heirs of each of his three deceased sisters. That by the use of the words "lawful heirs" in the will, such intention of the testator was not clearly expressed, and such failure was caused by the mistake of the testator and the scrivener as to the technical meaning of the words "lawful issue." Wherefore, the defendants prayed that the will be construed to devise the property *per stirpes*, and that it be so divided, etc.

On the trial, W. H. Montgomery, over the plaintiff's objections and subject to the reservation on the part of the court to strike out his testimony if the court concluded it was inadmisssible, testified substantially as follows on direct-examination: That the testator told him that "he wanted his property divided among his family, with the exception of John and Will Barber, who were provided for as it was, and that when he (Montgomery) wrote the will and used the words 'lawful heirs' he used the words to designate the brothers and sisters of John G. Hays, testator, and was attempting to carry out the instructions of said Hays, as he understood them, and witness put the words 'lawful heirs' in said will to mean the brothers and sisters of said Hays, or their representatives."

On cross-examination, the witness said: He did not know whether testator's sisters, except the one (Belle) who died without issue, were dead or not at the time the will was written.

"Q. The point about it all is, that the directions that he gave you, as I understood your testimony, prior to the making of this will, was that he wanted his property to go to his family? A. Yes, sir.

"Q. And you wrote the will and wrote it as it is here in evidence? A. Yes, sir.

"Q. And read it over to him, and he said it was all right without any changes? A. I didn't change it any.

"Q. Didn't I understand you to say that you asked him if it was all right? A. He said it was. There was no change made in the will."

James Hays, a brother of the deceased, under same objection and reservation, testified: That immediately after making the will, the testator talked to him about it, and said, "It is all fixed, Jim. I cut out the Barbers. I want my estate to go to my brothers and sisters."

The evidence further showed that besides the two Barber boys, grandchildren of the testator's deceased sister, Clarissa, the testator left the following nieces and nephews: Mrs. A. C. Barber, only child of his deceased sister, Ann Coston; Allie L. Wooley, Ernest Hudson and Lillie Ferrell, only children of testator's deceased sister, Mary Hudson; Richard Coston, Edith Baker and Mabel Bateman, only children of testator's deceased sister, Mattie Coston. Testator's surviving brothers were: William R. Hays, James T. Hays and Joseph Hays. Joseph Hays was of unsound mind and in the insane asylum. The testator was about 72 years old at the time of his death and at the date of his will, February 19, 1916. He died in St. Louis, where he had gone on business and was suddenly taken ill and died of pneumonia. He was a farmer and lived on his farm with the family of the son of his brother James, about one mile and a half north of Skidmore, Nodaway County. He lived there with his nephew about a year before he died; prior to that, his maiden sister, Belle, who died in 1915, kept house for him. None of the children of Mrs. Hudson lived in Nodaway County when testator died. One of them, Mrs. Wooley, lived in Kansas City, and another, Lillie Farrell, lived near Weston, Missouri, and the son lived somewhere north. They had been gone from Nodaway County from three to five years. They were on good terms with the testator. He went to see them several times. Two of the Mattie Coston children lived in Colorado, and one in the State of Washington. The two girls were married and had families; the boy was not married. Mrs. A. C. Barber, the only child of testator's sister, Ann Coston, lived at Skidmore. Testator was on friendly terms with his

three brothers, as well as with Mrs. Barber. They visited one another frequently. Testator cared for his twin brother, Joseph, who was of unsound mind, most of the time, after he became insane, and had been his guardian. James T. was Joseph's guardian part of the time, and secured a pension and increase of pension for him, of $18 per month. Joseph's board cost $20 per month. The other two brothers, James and William, were comfortably situated financially. One of them, James, had seven children and four grandchildren. The other, William, had four children. Joseph was a bachelor and had nothing but his pension. The nieces and nephews, except the Barber boys, were in comparatively poor circumstances.

The abstract of the record does not show the value of the property of the deceased, but in their statement of the case, appellants' learned counsel say, that he left a large tract of land in Nodaway County, which respondent's learned counsel say was worth, after paying all debts, about $45,000.

The circuit court in rendering its decree struck out the testimony of Montgomery as to the directions of the testator and his understanding and intention in the use of the words "lawful issue" in the will, and also struck out that part of the testimony of James T. Hays showing the declarations of the testator as to how he had disposed of his property by his will. Thereupon, the court ruled that in and by said will the estate in question was divided *per capita,* and that each of the testator's brothers and each of his nieces and nephews received the same portion thereof, to-wit, one-tenth.

Failing to obtain a new trial, defendants appealed to this court.

I. A will is required to be in writing, and therefore parol evidence as to what the testator said as to his

**Parol Testimony.**  intention, either before or after his will is made, is clearly incompetent. Consequently, the lower court made no error in striking out

the oral testimony of the witnesses, Montgomery and James T. Hays, which it excluded. [Hurst v. Von De Veld, 158 Mo. l. c. 247.]

In the cases cited by learned counsel for appellants, to-wit, Riggs v. Myers, 20 Mo. 243; Creasy v. Alverson, 43 Mo. 13; Thomson v. Thomson, 115 Mo. 56; Gordon v. Burris, 141 Mo. 602; Willard v. Darrah, 168 Mo. 660, and other cases, parol testimony was permitted to identify the property of the testator or the correct name of a devisee, so as to put the court in the testator's position in order to interpret the words of his will correctly. No parol testimony of what the testator said as to his intention or what the scrivener meant by the words used in the will was admitted. To admit such testimony would be to permit wills to be made by parol and would, in effect, repeal the statute requiring them to be in writing.

Nor do the words "lawful heirs" create any ambiguity—latent or otherwise. Those words are as certain in their meaning as any words of the English language can be. Indeed, the Statute of Descents and Distribution very clearly fixes and defines their meaning. Consequently, direct parol evidence, such as was offered below, was not admissible to explain or vary their import or use in the will in this case.

II. But the circumstances surrounding the testator when he made his will, such as the amount and character

Circumstances. of his property, his relations with his relatives who were the natural objects of his bounty, and their situation and circumstances, were admissible to place the court as nearly as may be in the testator's situation so that his true intent and meaning, as shown by his will, viewed as he viewed it, can be ascertained and followed as required by our statute, Section 583, Revised Statutes 1909. [Hall v. Stephens, 65 Mo. 677; McMahan v. Hubbard, 217 Mo. 638-40; Willard v. Darrah, 168 Mo. 667.]

III. It is true, that in will cases precedents are of little value, because each will and the circumstances under which it was made, are generally different from every other will and made under different circumstances. But the primary meaning of certain words and phrases by often repeated rulings of the courts may become so fixed as to compel the belief that in other cases such words and phrases were used in their established sense. The whole difficulty in this case arises from the use of the words "share and share alike" in the second clause of the testator's will. It seems that it is well established by the decided cases that where the testator devises his property to "his heirs" or "lawful heirs," without more, they take *per stirpes* or *per capita,* the same as they would had the testator died intestate. [30 Am. & Eng. Ency. Law (2 Ed.), p. 730, and cases cited.] But, where the devise is to the testator's "heirs" or "lawful heirs," "*share and share alike,*" or using other words importing an equal division, the "heirs" or "lawful heirs," although related in different degrees to the testator, as brothers and sisters and nieces and nephews, are treated as constituting but one class of devisees who will take equally *per capita,* unless by the will they are separated into different classes, or there is something in the will showing a different intent. [30 Am. & Eng. Ency. Law (2 Ed.), p. 731, and cases cited; 40 Cyc. 1490; Records v. Fields, 155 Mo. 314, 324-5; In re Mays, 197 Mo. App. 555, 560-64; McIntire v. McIntire, 192 U. S. 116; Kling v. Schnellbecker, 107 Iowa, 636; Johnson v. Bodine, 108 Iowa, 594; Kalbach v. Clark, 133 Iowa, 215; Kean's Lessee v. Hoffecker, 2 Harr. (Del.) 103; Farmer v. Kimball, 46 N. H. 435; Dukes v. Faulk, 37 S. C. 255; Mooney v. Purpus, 70 Ohio St. 57; Laisure v. Richards, 103 N. E. (Ind.) 679; Ramsey v. Stephenson, 34 Ore. 408; Walker v. Webster, 95 Va. 377; Richards v. Miller, 62 Ill. 417; Hill v. Bowers, 120 Mass. 135.] The rule is illustrated by the decision of this court in Records v. Fields 155 Mo. 314; supra. There, the will provided that the testator's property should be "equally

*Share and Share Alike.*

divided *between* the heirs of William and James, deceased,'' both of whom were brothers of the testator. It was held that two classes of devisees were created; one, the heirs of William; and the other, the heirs of James; and they each took half of the estate; but that the children and grandchildren of William constituted but one class as between themselves and took equally *per capita.* In In re Mays, 197 Mo. App. 555, supra, the St. Louis Court of Appeals had occasion to consider the law on this subject quite thoroughly, and announces its conclusion, in which we concur, on page 564, as follows: ''The common law rule prevailing throughout this country [is] to the effect that the settled legal construction of the words 'equally to be divided,' or equivalent terms, when used in a will, are to cause an equal division of the property *per capita,* and not *per stirpes,* whether the devisees be children and grandchildren, brothers or sisters, or nieces and nephews, or strangers in blood to the testator.''

IV. Appellants do not seriously deny that this is the usual rule established by the case-law, but contend that under our statute, Section 583, Revised Statutes 1909, which commands that ''all courts and others concerned in the execution of last wills shall have due regard to the directions of the will, and the true intent and meaning of the testator, in all matters brought before them,'' an extra injunction is placed upon the conscience of the court to disregard mere technicalities and artificial rules of construction and follow the real spirit and intent of the testator, as shown by his whole will and the circumstances. In this we concur. But, every word and phrase must also be given effect lest we miss the true intent and meaning of the testator—unless, indeed, we are satisfied that no special effect was intended to be given to a particular word or phrase and its use was a mere formality signifying nothing, or its meaning was qualified or neutralized by other provisions of the will, which we cannot find is the case here.

It is suggested, in this case, that the sole purpose of the testator in making a will at all was simply to dis-

inherit the two Barber boys, because they were otherwise amply provided for, and that but for this fact the tes-tator would have made no will, but permitted his property to descend according to law, in which case his lawful heirs would have taken *per stirpes* and not *per capita;* that he intended to make no change in the lawful course of distribution of his property after his death except as to the two Barbers; that he made no special legacies nor bequests whatever, but devised his property generally to his lawful heirs, share and share alike, and thereby intended it to go to them share and share alike *per stirpes* and not *per capita.* While the argument is plausible, it is not sufficiently firmly founded on the language of the will and the circumstances of the testator to take this case out of the general rule noted in the preceding paragraph of this opinion. Indeed, the language of the clause devising the property to his lawful heirs "share and share alike," except the two Barbers, who shall only receive one dollar, in itself bears some indication that the testator thought they would get an equal share under his will with the rest of his heirs, unless they were excluded. But, however that may be, clear it is, that they were excluded because they were "amply provided for." The will expressly so states. The evidence shows that his surviving brothers were fairly well off financially, except the insane one, who had a pension which was nearly sufficient to support him at the asylum. He was an old man nearly 72 years old, needed little in his unfortunate condition, and would not need that little long. His "*per capita*" or one-tenth share, or $4,500, would with his pension, comfortably attend to his wants, no doubt, the remainder of his days. But all the nieces and nephews, except the Barbers, with all of whom, as well as his brothers, he was on perfectly good terms, were young and comparatively poor. Showing, as his will does, on its face, that he did not mean to give to them "that had" but to them "that had not," we are unable to say that the testator did not attach to his words, "lawful heirs, share and share alike," their usual legally established mean-

ing, so that his nieces and nephews would each get an equal share with his brothers. We are, therefore, constrained to and do hold, that at the time he made his will he intended to have his "lawful heirs" take equally *per capita*, as a single class of devisees, and there is nothing in any provision of the will or the surrounding circumstances to the contrary. It is possible he would have distributed his property *per stirpes* or differently than he did had he taken further time and thought, but death was hurrying him out of the world when he made his will, and after having it read over, he signed it, and let it go—as it was written. We cannot disturb it now.

The judgment of the circuit court is affirmed. *Brown* and *Ragland, CC.,* concur.

PER CURIAM:—The foregoing opinion of SMALL. C., is adopted as the judgment of the court. *Blair, P. J., Graves* and *Goode, JJ.,* concur; *Woodson J., dubitante.*