## ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY *v.* STATE.

### Opinion delivered July 9, 1917.

INTERSTATE COMMERCE—CONFLICT BETWEEN INTERSTATE AND INTRASTATE FREIGHT RATES.—Where the Interstate Commerce Commission has fixed a reasonable interstate freight rate upon certain commodities, the carrier may remove discrimination as to the same by placing the intrastate rate upon the same commodities at the same amount.

Appeal from Lee Circuit Court; *J. M. Jackson,* Judge; reversed.

*Edward J. White, Henry G. Herbel, Fred G. Wright* of St. Louis, Mo., and *Troy Pace* and *W. R. Satterfield,* for appellant.

1. The demurrer to the answer should have been overruled. A carrier may apply on intrastate traffic moving over the same rails, between the same points, a freight rate that has been declared by the Interstate Commerce Commission to be reasonable on interstate traffic, moving between the same points in order to remove a discrimination between such rates. 234 U. S. 342; 205 Fed. 380; 38 I. C. C. 459; *Rowland* v. *R. R. Comrs., etc.,* 244 U. S. 106; *Am. Exp. Co.* v. *State,* 244 U. S. 617.

*John D. Arbuckle,* Attorney General, and *T. W. Campbell,* Assistant, for appellee.

The demurrer was properly sustained. The order of the Interstate Commerce Commission alone can not annul the lawfully established intrastate rates of a State, and the opinion in 234 U. S. 342, when properly construed

does not recognize any such power. The Interstate Commerce Commission has no power to prescribe or enforce minimum rates. The Arkansas Railroad Commission is given power *to make the rates that must be charged* by all common carriers in this State. But not so with the powers of the Interstate Commerce Commission. Its powers are set forth in section 15, act February 4, 1887, as amended by act June 29, 1906, and June 18, 1910. See 169 U. S. 466; 156 *Id.* 649; 183 Fed. 427; 149 U. S. 777; 178 Fed. 261; 184 *Id.* 118; 230 U. S. 417, 421-3; 161 N. W. 132.

SMITH, J. This suit was brought to recover the statutory penalty for a charge made on two intrastate shipments of lumber in excess of the rate fixed for such service by the Arkansas Railroad Commission. A charge of four cents per hundred pounds was made, whereas the rate fixed by the Arkansas Railroad Commission for the service charged for was three and one-half cents per hundred pounds.

The railway company admitted making the charge in excess of the rate fixed by the Arkansas Railroad Commission, and, in justification of its action in so doing, set up the following facts:

That the Memphis Freight Bureau of Memphis, Tennessee, for and on behalf of numerous persons engaged in business in that city, on June 22, 1914, filed its complaint before the Interstate Commerce Commission against the defendant, St. Louis, Iron Mountain & Southern Railway Company, and other railroads, which said proceeding is known as 7030 on the docket of the Interstate Commerce Commission, entitled *"Memphis Freight Bureau et al.* v. *St. Louis, Iron Mountain & Southern Railway Company et al.,"* in which said complaint it was charged and alleged that the defendant railway company and other common carriers operating in the territory were charging rates, for the transportation of lumber in carload lots, from points on the line of the St. Louis, Iron Mountain & Southern Railway Company and other

common carriers in Arkansas and Louisiana to Memphis,. which were unreasonable and unduly prejudicial to jobbers doing business in the city of Memphis. That, after a full hearing of all parties interested, the filing of briefs and the making of oral arguments, said cause was submitted to the Interstate Commerce Commission for its decision on April 27, 1915, and said commission, on May 9, 1916, rendered its decision and filed its report and order.

That by said report the commission found that the said rates charged by the St. Louis, Iron Mountain & Southern Railway Company and other common carriers, on shipments of lumber in carload lots from points on their lines in Arkansas and Louisiana to Memphis, Tennessee, were just and reasonable, these rates having been approved by the Interstate Commerce Commission. That the Railroad Commission of Arkansas had established a tariff regulating freight charges within the State of Arkansas to be collected by the St. Louis, Iron Mountain & Southern Railway Company and other common carriers on lumber in carload lots from one point in the State of Arkansas to other points in said State, and the rates which were being charged from points within the State of Arkansas to Memphis, Tennessee, exceeded more than one cent per hundred pounds the rates contemporaneously applied by the St. Louis, Iron Mountain & Southern Railway Company and other like carriers for the transportation of like shipments for like distances between points in Arkansas under such tariff made by the said Railroad Commission of Arkansas, and the Interstate Commerce Commission found and held that these rates subject Memphis to undue and unreasonable prejudices and disadvantages. That the said Interstate Commerce Commission, upon so finding, issued its order, 7030, in which, among other things, it notified and ordered the defendants, St. Louis, Iron Mountain & Southern Railway Company and other common carriers, to cease and desist, on or before August 1, 1916, and thereafter, from publishing, demanding, or collecting any

rates, for the transportation of lumber, in carload lots, from points on their lines in the State of Arkansas to Memphis, Tennessee, which exceeded, by more than one cent per hundred pounds, the rates contemporaneously applied by said common carriers to the transportation of like shipments, for corresponding distances, between points in Arkansas. A copy of said findings, report and order were attached, marked Exhibit "A," and made a part of the answer.

That, in obedience to said order of the Interstate Commerce Commission, the defendants filed, before the Interstate Commerce Commission, what is known as Supplement 18 to Missouri Pacific Tariff No. 1110-F, and which took effect, upon the class of freight herein mentioned, August 1, 1916. That said tariff was issued June 28, 1916, duly filed with the Interstate Commerce Commission and approved by it as Supplement No. 18 to I. C. C. No. A-2887. That, in this tariff, the rates were adjusted and filed to conform to the order of the Interstate Commerce Commission hereinbefore mentioned.

That, shortly after said tariff was filed with the Interstate Commerce Commission, and before it became effective, vigorous protest was filed against it by numerous shippers of lumber and other commodities named therein with the Interstate Commerce Commission, which was therein requested to suspend said rates, as it had the right and power to do under section 15 of the act to regulate commerce; but, after due consideration of said protest, it refused to suspend said tariff, but permitted it to go into effect.

That, prior to this time, the Railroad Commission of Arkansas had put into effect what is known as Standard Freight Distance Tariff No. 5, to regulate freight charges on the class of freight herein mentioned between points in the State of Arkansas. The defendants asked that the Arkansas Railroad Commission make its rates in compliance with the order of the Interstate Commerce Commission, so as not to make the rate, on the class of material herein mentioned, between points in the State of Ark-

ansas, more than one cent per one hundred pounds less than the rates fixed by the Interstate Commerce Commission tariff above mentioned; but the said Arkansas Railroad Commission refused so to do; therefore, it became necessary, in order for the defendants to comply with the order of the Interstate Commerce Commission, to, put into effect a tariff, for shipment of said material between points in Arkansas, which would not be more than one cent per hundred pounds less than the rate checked in to comply with the order of the Interstate Commerce Commission, and, in obedience to said order of the Interstate Commerce Commission, defendant did put into effect, August 1, 1916, its tariff known as Tariff 5807, eliminating discrimination as ordered by the Interstate Commerce Commission, and under such tariff the correct, proper and legal charge upon the shipments mentioned and complained of in the complaint herein was, and is, four cents per one hundred pounds.

That defendants have been charging, and are charging, the rates mentioned in said Tariff No. 5807, for shipment of the material herein mentioned, in carload lots, between points in Arkansas, in order to comply with said order of the Interstate Commerce Commission. That the said rates are, in no case, higher than those filed with the Interstate Commerce Commission, but are one cent per one hundred pounds less than the rates to Memphis for similar distances.

The defendants state that it is impossible for them to comply with the opinion and order of the Interstate Commerce Commission, marked Exhibit "A" hereto, and with the tariff of the Arkansas Railroad Commission hereinbefore referred to as Standard Freight Distance Tariff No. 5, without charging interstate rates and establishing lower classifications, ratings and exceptions than were found reasonable by the Interstate Commerce Commission, and that the said order of the Interstate Commerce Commission and the rates fixed by the Arkansas Railroad Commission are in direct and irreconcilable conflict, and defendants allege that the rates fixed by the

Arkansas Railroad Commission, in its Standard Freight Distance Tariff No. 5, on the material mentioned in said order of the Interstate Commerce Commission, are null, void and of no effect.

To this answer a demurrer was filed, upon the ground that the facts recited did not constitute a defense to the complaint of the State, and, upon the hearing thereof, the demurrer was sustained, and, defendants refusing to plead further, the statutory penalty was imposed, and this appeal has been prosecuted to reverse that action.

Upon the authority of the case of *Houston, East & West Texas Ry. Co. and Houston & Shreveport R. R. Co. et al., Appellants,* v. *United States, the Interstate Commerce Commission et al.,* 234 U. S. 342, generally referred to as the Shreveport case, the State concedes the power of the Interstate Commerce Commission to make the order set out in the answer of the railway company; but the State does not concede that the effect of this order is to nullify the rates, or any of the rates, prescribed by the Arkansas Railroad Commission, or to justify the railway company in ignoring said rates.

It is said that this is true because the Interstate Commerce Commission does not prescribe, and has not prescribed, minimum rates, but has prescribed only maximum rates, and it is argued that the railway company can comply with the order of both the Interstate Commerce Commission and the rates fixed by the Arkansas Railroad Commission by the simple expedient of reducing its interstate rates to a point where they will not exceed, by one cent per one hundred pounds, the tariff rates fixed by the Arkansas Railroad Commission.

We think this argument does not properly take into account the far-reaching effect of the decision of the Supreme Court of the United States in the Shreveport case, *supra,* and we become convinced of this when we read the amplification of that opinion, and its application to the facts recited, in the recent case of *American Express Co. et al., Plaintiffs in Error,* v. *The State of South Dakota*

*ex rel., et al.,* 244 U. S, 617.   This last opinion was handed down by the Supreme Court of the United States on June 11, 1917.

The material facts out of which the litigation arose which was terminated by the decision of the Supreme Court of the United States in the Shreveport case, *supra,* are substantially similar to the facts of the instant case.   Complaint was made to the Interstate Commerce Commission of rates which were alleged to be discriminating against Shreveport.   This discrimination grew out of compliance with the intrastate rates fixed by the Railroad Commission of Texas.   The Interstate Commerce Commission made substantially the same order as was made in the instant case, and this order was reviewed by the Commerce Court, and its action affirmed in an opinion by that court.   See *Texas & Pacific Ry. Co.* v. *United States (Interstate Commerce Commission et al., Interveners),* 205 Fed. 380.

In that case it was said that interstate carriers had the lawful right to charge the maximum rate approved by the Interstate Commerce Commission, and this and other cases appear to settle the law definitely to be, in any collateral inquiry, that the rate is reasonable which the Interstate Commerce Commission has approved, and that railroads have the right to charge the maximum rates thus fixed and approved, and it was there expressly held that, when an interstate rate had been thus approved and held reasonable, the carrier was at liberty to raise the intrastate rates to a level with that rate, and could not be compelled to reduce such reasonable interstate rates to a level with the current intrastate rates.   That the authority of Congress was clear to prevent the interstate carrier from unjustly discriminating in its rates in favor of one person or locality against another person or locality under substantially similar conditions of traffic, and, in discussing how the carrier might avoid the discrimination, the court there said:

"But if the action of the Texas commission regarding these intrastate rates is in derogation of the regulat-

ing power of Congress, the petitioner is not bound by that action, but has the right to readjust its schedules in conformity with the order of the Interstate Commerce Commission."

In the same opinion it was also said:

"The commission also found by necessary inference, as its order clearly indicates, that the interstate commodity rates in question were not unreasonable, and this in effect sanctioned the continuance of those rates. It is likewise a necessary inference from the report and order that the unlawful discrimination against Shreveport, so far as commodity rates are concerned, was caused by the imposition of intrastate rates which are lower than petitioner is justly entitled to charge. This being so, it follows that petitioner is at liberty and has the right to comply with the commission's order by making a proper increase of its Texas rates. Indeed, since its interstate rates are not excessive, such an increase appears to be the only method of compliance which would be just to both shipper and carrier.

"When this order was made, upon the facts so ascertained and reported, it had the effect, in our judgment, of relieving petitioner from further obligation to observe the intrastate rates which the Texas authorities had prescribed. The petitioner was no longer under compulsion in respect of those rates, because the rate situation disclosed by the inquiry was subject in its entirety to the provisions of the Federal statute and the administrative control of the commission. The order of the commission therefore operated to release petitioner as regards the intrastate rates in question, from the restraint imposed by the State of Texas; and thereupon petitioner became entitled, if it did not choose to reduce its interstate rates, to comply with the order by advancing its Texas rates sufficiently to remove the forbidden discrimination. Its obedience was due to the superior authority, and it ceased to be bound by any inconsistent obligations. * * * It is sufficient to hold, as we do, that petitioner can not resist the order on the ground of involuntary action, because the

effect of that order was an exemption of these intrastate rates from Texas authority.''

This commerce court has since been abolished by Congress, but, upon the appeal which was prosecuted from this decision, the case was consolidated with the case of *Houston, E. & W. T. Ry. Co. et al.* v. *United States (Interstate Commerce Commission et al., Interveners)*, 205 Fed. 391, under which style the opinion on the appeal is found reported in 234 U. S. 342. This is the case which we have said is commonly referred to as the Shreveport case, and in the opinion of the court handed down by Mr. Justice HUGHES, the decision of the commerce court was fully approved. These two appeals from the commerce court were argued and submitted together on October 28 and 29, 1913, and the opinion delivered on June 8, 1914, and the report of the case as well as the opinion itself indicate that the question decided received the most careful consideration. In concluding the opinion it was there said:

''In conclusion: Reading the order in the light of the report of the commission, it does not appear that the commission attempted to require the carriers to reduce their interstate rates out of Shreveport below what was found to be a reasonable charge for that service. So far as these interstate rates conformed to what was found to be reasonable by the commission, the carriers are entitled to maintain them, and they are free to comply with the order by so adjusting the other rates, to which the order relates, as to remove the forbidden discrimination. But this result they are required to accomplish.

''The decree of the commerce court is affirmed in each case.''

In the brief filed on behalf of the State the argument is made that the order of the Interstate Commerce Commission alone can not annul the lawfully established intrastate rates of a State, and it is insisted that the opinion in the Shreveport case, when properly construed, does not recognize any such power in the Interstate Commerce Commission. In support of this view, the case of *State*

*ex rel. Attorney General* v. *American Express Co.,* 163 N. W. 132, is cited, and such appears to have been the view of the Supreme Court of South Dakota as reflected in that opinion. But a writ of error was allowed December 11, 1916, and that decision was reversed by the Supreme Court of the United States in an opinion handed down on June 11, 1917. In reviewing the nature of the order of the Interstate Commerce Commission, designed to prohibit a discrimination against shippers in favor of intrastate shippers, the court, in this last cited opinion, said:

"In its specific direction the order merely prohibits charging higher rates to and from Sioux City than to and from the five South Dakota cities. It could be complied with (a) by reducing the interstate rates to the South Dakota scale or (b) by raising the South Dakota rates to the interstate scale or (c) by reducing one and raising the other until equality is reached in an intermediate scale. The report (which is made a part of the order) contains, among other things, a finding that the interstate rate which was prescribed by the commission was not shown to be unreasonable. This finding gives implied authority to the express companies both to maintain its interstate rates and to raise, to their level, the intrastate rates involved. The Shreveport case (*Houston E. & W. Texas Ry.* v. *United States*), 224 U. S. 342. For, if the interstate rates are maintained, the discrimination can be removed *only* by raising the intrastate rates."

In reversing the decision of the Supreme Court of South Dakota, it was there also said:

"2.   The power of the Interstate Commerce Commission.

"The Supreme Court of South Dakota declares:

"If the purported order of the commission does, in any respect, regulate intrastate commerce, it is to that extent void owing to the commission's want of jurisdiction over the subject matter.

"That court denies not only the intent of Congress to confer upon the commission authority to remove an ex-

isting discrimination against interstate commerce by directing a change of an intrastate rate prescribed by State authority; but denies also the power of Congress under the Constitution to confer such power upon the commission or to exercise it directly. The existence of such power and authority should not have been questioned since the decision of this court in the Shreveport case.

"It is also urged that even if the commission had power, under the circumstances, to order a change of the intrastate rates, the order in question was invalid, because the commission, instead of specifically directing the change, undertook to give to the carrier a discretion as to how it should be done and as to the territory to which it should apply. The order properly left to the carriers' discretion to determine *how* the discrimination should be removed; that is, whether by lowering the interstate rates or by raising the intrastate rates or by doing both. In its general form the order is identical with that under consideration in the Shreveport case."

The necessary effect of these decisions is that the railway may charge the rate approved by the Interstate Commerce Commission in its interstate shipments, and that it may comply with the order of that commission to remove existing discriminations against interstate shipments by raising the intrastate rate to such a point that, according to the ruling of the Interstate Commerce Commission, a discrimination will not exist.

It follows, therefore, that the court erred in sustaining the demurrer, and that judgment will be reversed and the cause remanded with directions to overrule the same.