John S. LEHMANN, Individually and as Trustee under Will of William S. Barnickel, et al., Plaintiffs-Appellants,

v.

Genevieve Barnickel JANES et al., Defendants-Appellants.

No. 51142.

Supreme Court of Missouri,
Division No. 1.

Dec. 12, 1966.

Motion for Rehearing and for Transfer to Court En Banc Denied Dec. 30, 1966.

Lowenhaupt, Chasnoff, Freeman & Holland, Jacob Chasnoff, Leonard J. Holland, St. Louis, for plaintiffs-appellants, John S. Lehmann, John V. Janes and the Boatmen's National Bank.

Fordyce, Mayne, Hartman, Renard & Stribling, Joseph Renard, Robert T. Johnson, St. Louis, for defendants-appellants, Carrie-May Scott Jones, George O. Jones and John R. Thomas.

Thomas F. McDonald, Henry C. Bryan, Jr., McDonald, Wright & Bryan, St. Louis, for defendants-appellants, Genevieve Barnickel Janes, and others.

David H. McGhee, St. Louis, for defendants-appellants, Allen Williams, and others.

Henry J. Kaltenbach, Warrenton, Va., Isaac C. Orr, St. Louis, for defendants-appellants, Marceline R. Kaltenbach, and others.

David Y. Campbell, St. Louis, for respondents, except John M. Hadley, guardian.

John M. Hadley, St. Louis, pro se.

Forrest C. Donnell, St. Louis, for said unknown heirs and pro se.

HENLEY, Judge.

This is a suit to construe the will of William S. Barnickel who died a resident of the City of St. Louis, Missouri, on May 19, 1923. By his will testator left the whole of his estate in trust. Assets of the estate distributed to his trustees consisted solely of ninety per cent of the stock of what is now William S. Barnickel & Company, a corporation, sometimes hereinafter referred

to as the Barnickel Company. This stock then had an appraised value of approximately $1,000,000; at the time of trial its value far exceeded that sum; its net annual income distributed to the beneficiaries exceeds $700,000. This court has jurisdiction because the amount in dispute exceeds $15,000.

The will in question is as follows:

"I, the undersigned William S. Barnickel of the City of St. Louis, State of Missouri, make this my last will and testament.

"I appoint Sears Lehmann, John S. Lehmann and Frederick W. Lehmann, Jr., or the survivor or survivors, executors and trustees of my estate, and direct that they furnish a $100,000 bond.

"I leave all of my property both real and personal wherever situated to my trustees, in trust for the following purposes.

"One third (⅓) of the income from said estate is to be paid to my daughter Genevieve Barnickel during her life.

"One sixth (⅙) of the income from said estate is to be paid to my sister Mrs. Della Barnickel Singer during her life.

"One sixth (⅙) of the income from said estate is to be paid to my sister Mrs. Leonora Barnickel Tucker during her life.

"One third (⅓) of the income from said estate to be divided as follows:

| | |
|---|---|
| Sears Lehmann | 0.15 |
| Frederick W. Lehmann, Jr. | 0.15 |
| John S. Lehmann | 0.2 |
| Herbert L. Barthels | 0.15 |
| Miss Katherine Purcell | 0.1 |
| Eugene O. Sanguinet | ~~0.5~~ 0.05 |

Erasure
OK
Wm. S. B.

| | |
|---|---|
| F. C. Reyburn | 0.05 |
| F. L. Kelley | 0.05 |
| C. C. Averill | 0.05 |
| Bernard Keiser | 0.05 |
| or their heirs. | |

"This trust to continue for the same period as the trust of that portion of my estate willed to my daughter Genevieve, at which time this interest shall vest absolutely in the foregoing.

"In event either or both of my said sisters die before my said daughter Genevieve Barnickel, the income otherwise payable to said sister or sisters shall be paid to my said daughter Genevieve Barnickel. Upon the death of my said daughter Genevieve Barnickel the income otherwise payable to her shall be paid to her children in equal shares, until the youngest of said children is twenty-one years old, at which time this trust as to the interest of my said daughter shall cease, and said estate shall be devided equally among said children, the child or children of any deceased child to take the share of said deceased child.

"In event my daughter Genevieve dies without leaving any children, or in event all of her children should die without issue before the termination of this trust

as specified in the foregoing paragraph then this trust as to the interest of my said daughter Genevieve shall cease, and said estate shall be devided as follows:

| | |
|---|---|
| Sears Lehmann | 0.15 |
| Frederick W. Lehmann | 0.15 |
| John S. Lehmann | 0.2 |
| Miss Katherine Purcell | 0.1 |
| Herbert L. Barthels | 0.15 |
| Eugene O. Sanguinet | 0.05 |
| F. C. Reyburn | 0.05 |
| F. L. Kelley | 0.05 |
| C. C. Averill | 0.05 |
| Bernard Keiser | 0.05 |

or their heirs.

---

"Upon the death of either or both of my said sisters the one sixth (⅙) interest left to each of them for life shall be added to and treated exactly the same as the one third interest of my said daughter Genevieve Barnickel.

"I direct that my executors and trustees shall continue the business of William S. Barnickel and Company, a partnership in which I have a nine tenths %10 interest and John S. Lehmann has a one tenth (⅒) interest, which is also our respective interest in the patents issued to and applied for by me. I also direct that my executors and trustees be authorized to incorporate said partnership business at their discretion.

"In event of the death resignation disqualification or failure to qualify of any of said executors and trustees the remaining two are authorized to select a third with the same powers as if appointed by this will.

"My executors and trustees are authorized to sell and reinvest the proceeds of any of the property either real or personal left by me.

"In witness whereof I have hereunto set my hand and affixed my seal this first day of August Nineteen hundred and twenty one, in the City of St. Louis Missouri."

For convenience, we will refer to the "one-third of the income from said estate * * * to * * * my daughter, Genevieve Barnickel" (now Mrs. John V. Janes) as the Janes Trust; the "one-third of the income from said estate to be divided" between ten named individuals according to certain percentages as the Associates Trust, and those ten individuals sometimes as the Associates.

Testator's two sisters, Mrs. Della Barnickel Singer and Mrs. Leonora Barnickel Tucker, are both deceased. His daughter, Genevieve Barnickel, married John V. Janes, is still living, and has four children, the youngest of whom is now over 21 years of age. All of the Associates survived testator; five are now deceased, being: Sears Lehmann, Frederick W. Lehmann, (the same person also designated in the will as Frederick W. Lehmann, Jr.), Eugene O. Sanguinet, F. C. Reyburn, and C. C. Averill. The five Associates still living are: Katherine Purcell, now Mrs. Wilbur C. Adams, Herbert L. Barthels, Forrest L. Kelley, Bernard Keiser, and John S. Lehmann.

Sears Lehmann died intestate in 1935, a resident of Missouri, and was survived by his wife and two children, all of whom are now living. Frederick W. Lehmann died testate in 1962 (after the trial of this suit and while it was under advisement), a resident of Iowa, and was survived by his wife

and two children, all of whom are now living. Eugene O. Sanguinet died testate in 1930, a resident of Missouri, and was survived by his wife and seven brothers, but no descendants. By his will he left his entire estate to his widow, Clara Ann Sanguinet, now deceased. All but one of the brothers of Eugene O. Sanguinet are now deceased, survived by a large number of descendants now living. F. C. Reyburn died intestate in 1929, a resident of California, survived by his wife, his mother, four brothers, and one sister, but no descendants. The California court in which his estate was administered distributed his estate to his widow as sole heir under the laws of that state. His mother and two brothers are now deceased, one of the brothers leaving descendants now living. C. C. Averill died testate in 1928, a resident of Texas, survived by his wife and three children. By his will his entire estate was left to his widow. One child has since died without descendants.

Two of the original trustees are dead: Sears Lehmann and Frederick W. Lehmann. On the death of Sears Lehmann the surviving trustees appointed John V. Janes, husband of Genevieve Barnickel, as successor co-trustee. On the later death of Frederick W. Lehmann, the trial court appointed The Boatmen's National Bank of St. Louis as successor co-trustee pendente lite. Those now serving as trustees are John S. Lehmann, John V. Janes and the Bank. As indicated, the trust is still alive and active.

John S. Lehmann (one of the trustees and one of the Associates) was the owner of the other ten per cent interest in the stock of the Barnickel Company at the death of testator, and apparently is still owner of that interest.

Of the three plaintiffs, John S. Lehmann prosecutes this suit in his individual capacity and in his capacity as one of the trustees. The defendants (over 130 in number) may be divided into the following general categories: (1) all living beneficiaries named in the will, (2) living spouses of all ten named Associates, (3) living heirs, and heirs apparent of all named beneficiaries whether living or dead (other than testator's two sisters whose life interests terminated on their respective deaths), (4) certain assignees of name beneficiaries, (5) all persons at present entitled to, or who claim to be entitled to, share in the income of the trust or in the principal were the trust to terminate now, (6) all living members of the several classes of beneficiaries who do, or may be entitled to claim an interest in trust income and principal, and (7) the unknown heirs, grantees or successors of the ten named Associates.

The pleadings of the several parties and pre-trial record memoranda occupy in excess of 160 pages of the transcript. We will not attempt to summarize the pleadings. A brief summary of plaintiff's prayer, a summary of the findings and decree of the trial court, and a statement of the contentions of the several parties will present adequately the issues.

Plaintiffs prayed that the court construe the will and determine (1) the meaning of its provisions pertaining to the ten named Associates, (2) whether the trustees should recognize an assignment of a purportedly fixed interest in the trust estate by a person purportedly succeeding to an interest therein by reason of the death of a named beneficiary, and (3) whether successor trustees have the same powers as the original trustees to appoint a successor trustee whenever a vacancy occurs.

We summarize those portions of the decree as to which questions have been raised and briefed on this appeal. Briefly, the court decreed:

1. That an equitable estate or interest in one-third of the income and corpus of the trust estate vested immediately in the Associates (according to their respective percentages of interest in said one-third) on the death of testator; that on the death of testator, each of the Associates had

" * * * the right to transfer or alienate their respective fractional equitable interests in the Associates Trust by assignment, by will, intestate succession, or in any other or different manner * * * "; that upon the death of an Associate prior to termination of the trust, his vested equitable estate or interest in the Associates Trust (except such as may have been disposed of by him) becomes a part of the Associate's estate and passes from the Associate (not from Testator) as part of his estate.

2. That the Associates have equitable estates or interests in the corpus of the Janes Trust (two-thirds of the trust estate) contingent upon Genevieve Barnickel Janes dying without leaving children or all her children dying without issue before termination of the trust; that these contingent interests " * * * belonged to them [Associates] effective at the date of testator's death, and any alienation of their respective contingent remainders by them whether by will, by assignment, by intestate succession or by contract, is effective subject only to the happening of the contingency * * * ", and that these interests (and that of any alienees) would be defeated on happening of the contingency; that upon the death of an Associate prior to termination of the trust, this interest in the Janes Trust (except such part as may have been disposed of by him) becomes a part of his estate and passes from the Associate (not from testator) as part of his estate.

3. "That the term 'or their heirs' as used in his [testator's] will * * * vests no interest whatever in the prospective heirs of the Associates * * *."

4. That successor trustees do not have the power to appoint a successor trustee whenever a vacancy occurs.

5. That the pleadings raise no issue as to the validity of a 1937 agreement between the widow of E. O. Sanguinet and the brothers and descendants of a deceased

brother of E. O. Sanguinet purporting to fix the interest of those persons in the Sanguinet share of the trust estate.

Six groups of parties appeal: (1) the trustees, (2) defendants, Genevieve Barnickel Janes and others of like interest, (3) defendants, Allen Williams, Michael V. Janes, and minor defendants of like interest by their guardian ad litem, (4) defendants, Marceline R. Kaltenbach and others of like interest, (5) defendants, the unknown heirs of the ten named Associates, (6) defendants, Carrie-May Scott Jones, et al., as trustees under the will of Clara Ann Sanguinet, deceased widow of Eugene O. Sanguinet.

The principal issues are when, and in whom, the interests of the Associates vest in (1) the Associates Trust and (2) the Janes Trust.

Defendants-Appellants, Genevieve Barnickel Janes, and others of like interest, Allen Williams, Michael V. Janes and minor defendants of like interest by their guardian ad litem, joining in one brief, as well as defendants, Marceline R. Kaltenbach and others of like interest, in a separate supporting brief, contend:

(1) that prior to termination of the trust the ten named Associates, or their heirs, take as beneficiaries only a contingent interest in the income of the Associates Trust; that upon the death of an Associate during the life of the trust each distribution of income from Associates Trust which would have been made to that Associate if living, is to be made to his heirs ascertained at the time of such distribution (i. e., heirs determined as if the Associate had died immediately prior to each distribution) according to the laws of Missouri in effect at the date of the Associate's death;

(2) that prior to termination of the trust the ten named Associates, or their heirs, have contingent interests only in the principal or corpus of the Associates Trust; that upon termination of the trust, the share of corpus of Associates Trust held

in trust for any then deceased Associate during his lifetime is to be distributed to his heirs ascertained at the time of such termination (i. e., heirs determined as if the Associate had died immediately prior to trust termination) according to the laws of Missouri in effect at the date of the Associate's death;

(3) that the interests of the ten named Associates, or their heirs, in the corpus of the Janes Trust are contingent as to person and event until termination of the trust; that such are not vested interests; that upon termination of the trust, if there is no child of Genevieve Barnickel Janes or issue thereof then living, the corpus of the Janes trust vests in the Associates then living and in the heirs at law of deceased Associates according to the percentage of interest of each Associate specified in the will; that the share of the corpus of an Associate deceased at termination of the trust is to be distributed to his heirs ascertained at the time of such termination (i. e., heirs determined as if the Associate had died immediately prior to trust termination) according to the laws of Missouri in effect at the date of the Associates' death;

(4) that the interest of an Associate or his heirs in either the Associates Trust or the Janes Trust may be sold or otherwise transferred.

Defendants-Appellants, the unknown heirs of the ten named Associates, contend that at the death of an Associate before termination of the trust his heirs (determined as of the date of death by the law of the domicile of Associate) take immediately by substitution for and in place of the Associate a "* * * vested fee simple equitable estate * * *" (a) in the Associate's share of the income of Associates Trust during the life of the trust, (b) in the Associate's share of the corpus of the Associates Trust at its termination, and (c) in the Associate's share of the corpus of the Janes Trust at its termination contingent upon there being no child

of Genevieve Barnickel Janes or issue thereof living at termination of the trust.

Defendants-Respondents, William M. Sanguinet and others of like interest in one brief as well as defendants-respondents, Carrie-May Scott Jones and others of like interest in another brief contend:

(1) that an indefeasible equitable estate or interest in one-third (Associates Trust) of the income and corpus of the trust estate vested immediately in the Associates (according to their respective percentages of interest in said one-third) on the death of testator, only the right of possession being postponed until termination of the trust;

(2) that the Associates have a "vested equitable fee" or "transmissible contingent" interest in two-thirds (Janes Trust) of the corpus of the trust estate.

In Housman v. Lewellen, 362 Mo. 759, 244 S.W.2d 21, this court en banc said at l. c. 23: "The ordinary, primary meaning is to be given to the language of the will, unless other terms used disclose that such meaning is repugnant to the testator's intent as it appears from the whole will. Mace v. Hollenbeck, Mo.Sup., 175 S.W. 876; Deacon v. St. Louis Union Trust Co., 271 Mo. 669, 197 S.W. 261, 264; Smoot v. Harbur, 357 Mo. 511, 209 S.W.2d 249, 251. Any conclusion as to what the testator may have had in mind must be based upon the legal effect of the language used in the will itself. Middleton v. Dudding, Mo.Sup., 183 S.W. 443, 444; * * * Gannett v. Shepley, 351 Mo. 286, 172 S.W.2d 857, 858 * * *." See also St. Louis Union Trust Company v. Krueger, Mo., 377 S.W.2d 303, 304 [1]. "When the terms of a will are not so plain and unambiguous as to leave no room for doubt or construction as to what the testator intended, * * *" we may, to ascertain testator's intent, consider the facts and circumstances surrounding testator when he made his will, such as: the amount, nature, extent and condition of his property; his relation to or association with persons having any interest in or relation-

ship with property the testator has an interest in; the natural objects of his bounty; any motives which reasonably could have actuated testator in the disposition of his property. Housman v. Lewellen, supra; Wooley v. Hays, 285 Mo. 566, 226 S.W. 842, 844, 16 A.L.R. 1 [3]; Lynn v. Stricker, Mo. App., 213 S.W.2d 672, 675 [1]; § 474.430, RSMo 1959, V.A.M.S.

Approximately seven years before execution of his will on August 1, 1921, testator developed a process to remove salt water from crude petroleum. In 1914 he applied for, and was later granted, a patent on the process. His friend and attorney, John S. Lehmann, assisted him in securing the patent and for these and other services was given a 10% interest in the patent and the business to be developed from it. With this process, ten friends (the Associates) and little or no capital he founded the business that was to grow into William S. Barnickel & Company. All of the Associates were close personal friends of Mr. Barnickel and key employees of, or advisors to, the business and its founder. It takes little imagination to see the struggle and striving of this close-knit group of friends and associates to advance and promote the welfare of this new business venture throughout its beginning years. About a year or two before Mr. Barnickel executed his will the business began to grow and prosper. Approximately six weeks before he executed his will his wife divorced him, and was awarded the custody of their only child, Genevieve (then 15 years of age), and $20,000 alimony in gross. John S. Lehmann represented Mr. Barnickel in the divorce suit. He testified that Mr. Barnickel and his wife " * * * didn't part friends * * * "; that there was some ill feeling toward his divorced wife when he made his will. Five days after the record of the alimony judgment was satisfied, Mr. Barnickel made his will. At that time he was 43 years of age; his parents were dead but he had two living sisters. His business had begun to prosper and he no doubt foresaw that under proper and interested management, it would continue to grow and prosper, that its potential was unlimited. The natural object of his bounty, the only child he was to have, was then living with her mother. No doubt the material thing closest to his heart was the new and exciting business he and his Associates were developing with marked success. There is no evidence that he anticipated an early death, but it may be significant that he died a comparatively young man less than two years after execution of his will. During this period his daughter chose to leave her mother and came to live with her father. It was in these circumstances and conditions that Mr. Barnickel executed his will August 1, 1921, and in their light that we seek to ascertain his intent and meaning from the whole will.

As stated, his principal asset was his interest in the Barnickel Company and the one person for whose welfare he was most concerned was his daughter. If this business were not held intact after his death, his prospects of providing for the security of his daughter were dim; if held intact in such manner as to permit and encourage its growth, his prospects of providing security for his daughter were enhanced. Aside from his daughter and sisters, those persons for whose welfare he would also be concerned would be the trusted friends whose loyalty and interest had contributed to the growth of his business. Also, as stated, the material thing closest to him was this business bearing his name, and he no doubt desired its success for its sake alone. To assure, so far as possible, the continued growth and prosperity of this business the natural thing for him to do was to turn to these friends, the ten Associates who knew the business and were concerned with its welfare; but only one of whom then had a financial interest in it. His chances of holding his organization intact and assuring the continued success of his business after his death certainly would be enhanced if he gave all these important, key personnel a financial interest in the business. All the parties suggest that it was also Mr. Bar-

nickel's intent to foreclose, so far as possible, the possibility that his ex-wife (then the only heir apparent of his daughter, other than himself) would ever take any part of his estate, and that to do so he need die fully testate. In the light of these facts and circumstances we have no difficulty in determining from the words of his will his intent as to when, and in whom, the Associates Trust would vest.

Obviously, it was the intent of the testator to dispose of his whole estate, leaving none of it to be disposed of by the statutes of descent. That this was his intent and that he accomplished this purpose is clearly evidenced by his words: "I leave *all* of my property * * * to my trustees, in trust for the following purposes." (Emphasis supplied.) This is further evidenced by his plan for distribution of all the corpus on termination of the trust. His testamentary scheme or plan for disposition of his estate is quite clear. To keep his business intact he left his whole interest in it in trust to trustees and directed that they continue to operate the business. To assure interested continuity of management he named three trusted friends (Associates) as trustees, one of whom was the owner of the other one-tenth interest in the business. To assure the trustees ample time within which to develop and promote the further success of the business, he provided that the life of the trust should continue until the death of his daughter (then only 15 years of age) without children or until her youngest child reached the age of twenty-one years. To recognize and reward these loyal Associates, but primarily to hold and guarantee the continued interest and contribution of these trusted key personnel and thereby further assure, so far as possible, the success of the business, he gave each a part of his estate so that each would have a financial interest in the business and could share in its growth and the fruits of their labor. Time and events have proven the wisdom of his plan.

 Of course, the legal title to his whole estate vested, and until termination of the trust remains vested, in his trustees. We conclude that the equitable title or estate in one-third (of both income and corpus) of his estate vested immediately on testator's death in the ten named Associates in that percentage of this one-third set opposite the name of each Associate in the will, these ten Associates having survived the testator. It necessarily follows that these vested equitable estates or interests were and are alienable by assignment, or by will or intestate succession according to the laws of the domicile of the respective owners thereof. In re Zook's Estate, 317 Mo. 986, 296 S.W. 778, 781 [5]. Upon termination of the trust the legal title to this one-third of testator's estate unites with the equitable title in those persons in whom the equitable estate is vested. This conclusion is supported by these authorities: Walter v. Dickmann, 274 Mo. 185, 202 S.W. 537, 538–539; Plummer v. Brown, 315 Mo. 627, 287 S.W. 316; Deacon v. St. Louis Union Trust Co., 271 Mo. 669, 197 S.W. 261, 264, 265 [2, 3]; Bredell et al. v. Collier et al., 40 Mo. 287; Annotation, 174 A.L.R. 319, et seq.; Simmons v. Cabanne, 177 Mo. 336, 76 S.W. 618; Morrell v. Building Management, Inc., 241 N.C. 264, 84 S.E.2d 910. For a brief statement of the foundation for the above conclusion see Restatement of the Law, Property, Vol. 1, § 37, p. 102, comment 1 from which we quote a part: "When a will contains a limitation of a present estate to 'A or his heirs' the rule stated in Comment d that a limitation effective in a deed to create an estate in fee simple absolute has like effect in a will, applies and A acquires an estate in fee simple absolute *if alive when the testator dies* (see § 27, Comment d). If A is then dead—and this is not unlikely in the case of a will—the persons who at that time are the heirs of A acquire an estate in fee simple absolute * * *." (Emphasis ours.) The effect of this rule is not changed by the creation of a testamentary trust whereby the legal and equitable titles are separated; the mere fact that the control and management of the trust estate is by trustees, with the legal title in them, does

not prevent vesting of the equitable estate in the beneficiaries, the Associates. Deacon v. St. Louis Union Trust Co., supra, 197 S.W. 1. c. 268 [14]; Bredell et al. v. Collier, et al., supra, 40 Mo. 1. c. 325–327.

Defendants-Appellants, Janes, et al. and Kaltenbach et al., contend that the following language of the will postpones vesting of title to the corpus of the Associates Trust until termination of the trust: "This trust to continue for the same period as the trust of that portion of my estate willed to my daughter Genevieve, at which time this interest shall vest absolutely in the foregoing." They argue that the word "interest," as used above, encompasses "title" and "estate;" therefore, testator's use of the word "vest" in connection with "interest" clearly relates to vesting of title, not possession.

The primary purpose of the above-quoted language of the will was to designate or fix the life of the Associates Trust, not to postpone vesting of title or estate. "Such expressions as are found in the above quotation have frequently come before the courts for consideration, and have uniformly been construed, when considered in the light of foregoing facts, to relate to the times when the [cestuis que trust] shall have possession, and have nothing to do with the vesting of the estate." Dunbar v. Sims, 283 Mo. 356, 222 S.W. 838, 839 [2]; Legg v. Wagner, Mo., 155 S.W.2d 146, 149 [9]; Williams v. Reid, Mo., 37 S.W.2d 537.

These appellants further contend that " * * * in the Barnickel will alternate remainders are designated [to take the Associates Trust]—the heirs of the respective named Associates." They also argue that other language of the will and the circumstances surrounding the testator at the time the will was made indicate that the Associates take only a contingent interest in the Associates Trust, and that vesting of the interest is postponed until termination of the trust. The other language in the will to which appellants refer is that pertaining to the termination of the trust for his daughter and the division of corpus of the Janes Trust among the Associates should his daughter die without children or her children without issue before termination. Appellants characterize the interest of Associates in the Janes Trust as a contingent remainder, and on that premise insist that since both the Janes Trust and the Associates Trust terminate at the same time it is only reasonable to conclude that the Associates Trust is also contingent.

As to the contention that alternate *remainders* are designated, no remainder interest is created in the Associates Trust by the trust instrument; no preceding estate is created, thus no remainder. Had the testator intended to create a life or other preceding estate in the Associates and a remainder (either vested or contingent) in their heirs he could have done so, but he did not. Had the testator intended that the Associates take only a contingent interest in the Associates Trust he could have so provided, but the fact that the Janes Trust and Associates Trust terminate at the same time is not indicative that he intended their interests be contingent on any event. We have said " * * * that the law favors the vesting of estates, and *in the absence of words expressing a clear intent to the contrary* an estate will be construed as vested rather than contingent, and, consistently with the testator's intention, the estate will be construed to vest at the earliest possible time, so that, unless otherwise clearly expressed, it will vest immediately upon the testator's death." Deacon v. St. Louis Union Trust Co., 271 Mo. 669, 197 S.W. 261, 265 [4]. (Emphasis supplied.) This rule applies to equitable estates or interests.

We conclude from the circumstances surrounding testator at the time he made his will, and from his will, that he intended to, and did, give Associates a present indefeasible interest, an equitable fee simple interest, in one-third of his estate; that this interest vested in Associates immediately

on testator's death; and, that possession only of the corpus is postponed until termination of the trust. We have considered the authorities cited by all appellants and their several contentions, but find them not persuasive. The limits of an opinion preclude our discussion of every authority cited and the details of every facet of their several contentions. What we have said effectively rules upon the contentions of all appellants.

As stated, both of testator's sisters, each of whom had an equitable life estate in one-sixth of the trust, are now dead, and their interests have merged with that of testator's daughter, Genevieve Barnickel Janes, so that the daughter's interest, which we have designated the Janes Trust, is now two-thirds. For convenience we refer again to those paragraphs of the will creating the Janes Trust and providing for its ultimate disposition on trust termination, and for this purpose consider that the total of one-third to the two sisters has merged with the interest of the daughter.

Testator gave the income from two-thirds of the trust to his daughter Genevieve for her life and provided that upon her death " * * * the income otherwise payable to her shall be paid to her children in equal shares, until the youngest of said children is twenty-one years old, at which time this trust as to the interest of my said daughter shall cease, and said estate shall be devided equally among said children, the child or children of any deceased child to take the share of said deceased child." In the next paragraph, testator gives this two-thirds interest in the trust to the Associates or their heirs upon termination of the trust should his daughter die without leaving children or descendants thereof before termination. The record shows that at the time this action was tried Genevieve Barnickel Janes had four living children, and it is said that she had many living grandchildren. For this reason, respondents say, " * * * it is highly improbable that [Genevieve] will not be survived by descendants." We assume that it is for the latter reason that re-

spondents treat very briefly with the question we must now discuss.

Again, such interest as Genevieve, her children or issue of deceased children, and Associates, took in this two-thirds of the trust estate was an equitable estate or title, the legal title being vested in the trustees. Obviously, Genevieve took an equitable life estate in the Janes Trust. It is clear that testator had his bloodline in mind and that he intended that this two-thirds interest go to her descendants upon her death, with only possession of the corpus withheld until termination of the trust on Genevieve's youngest daughter attaining the age of twenty-one years. It is equally clear that testator intended that the corpus of this two-thirds interest go to his Associates or their heirs should his daughter die without children or her children die without issue before trust termination.

We refer again to the contentions of the appellants, unknown heirs of the Associates, but need not restate them.

Our understanding is that the appellants, Janes, et al., Kaltenbach, et al., and Williams, et al., contend that the interests of the Associates in the Janes Trust did not vest on the death of Mr. Barnickel and cannot vest until trust termination; that such interests are contingent as to person and event until trust termination; that, therefore, should the Janes Trust terminate without a child or issue of a deceased child of Genevieve surviving, the share of an Associate who had died prior to trust termination would go to his *heirs at law,* those heirs to be determined according to the laws of Missouri in effect at the death of that Associate. Consequently, it would seem, the effect of their contentions is that this interest of Associates is inalienable prior to trust termination, yet, they request that we find that such interests as they say Associates have " * * * may be sold or otherwise transferred."

What interest did the Associates acquire in the corpus of the Janes Trust?

By his will testator provided a life estate in two-thirds of the trust estate for his daughter, Genevieve, with alternate contingent remainders over. In other words, he created: (1) a life estate, and (2) two remainders, each a substitute or alternative for the other, only one of which can possibly vest because of the contingencies hereinafter mentioned. These two remainders are: (1) to the children and issue of deceased children of Genevieve, contingent upon there being a child or children or issue of a deceased child living when the trust terminates; (2) to the Associates or their heirs, contingent upon there being no child or children or issue of a deceased child of Genevieve living when the trust terminates. 31 C.J.S. Estates § 75, p. 152; 33 Am.Jur., p. 542, § 85; also see Tapley v. Dill, 358 Mo. 824, 217 S.W.2d 369, 372, and authorities collected in footnote 4.

While testator could have, he did not condition the contingent remainder interests of Associates in the Janes Trust upon their being alive on trust termination; therefore, these interests passed to Associates immediately on testator's death. Tapley v. Dill, supra, 217 S.W.2d l. c. 372, 373. We have held that contingent remainders are alienable. See Grimes v. Rush, 355 Mo. 573, 197 S.W.2d 310, 311 [3], and authorities collected in footnote 1.

We hold: (1) that upon the death of testator the Associates took an alternative contingent remainder interest in two-thirds of the corpus of the trust estate according to their respective percentages of interest in that two-thirds as specified in the will; and, (2) that those interests were and are alienable by assignment, by bequest or descent. This holding necessarily determines the contentions of the unknown heirs of Associates.

Another or side issue is presented by the appeal from a part of the decree by defendant, Carrie-May Scott Jones, and defendants, George O. Jones and John R. Thomas as trustees under the will of Clara Ann Sanguinet, deceased. Their appeal is limited to that part of the decree holding: (1) that the pleadings raise no issue " * * * as to the invalidity of * * *" a certain "Conveyance and Agreement" dated September 2, 1937, executed by Clara Ann Sanguinet, widow of Eugene O. Sanguinet, and the brothers and descendants of a deceased brother of Eugene O. Sanguinet; (2) that the Trustees of the Barnickel estate must recognize the above agreement because it was executed by all parties then having any interest in the Sanguinet share of the trust estate.

We state as briefly as possible the facts necessary to an understanding of the issues raised by this appeal, Eugene O. Sanguinet, one of the Associates, died testate in 1930 leaving all of his property, including his interest in the Barnickel Trust, to his widow, Clara Ann Sanguinet. He left no descendants. Shortly after his death a controversy arose between his widow and his seven brothers as to the ownership and disposition of his interest in the Barnickel Trust. The widow claimed that she was the owner as the sole legatee of her husband; the brothers claimed that they were the owners as the only heirs at law of their deceased brother, that is, that their brother's interest in the trust was contingent upon his being alive when the trust terminated and since he did not survive that event his interest in the trust passed to his brothers. During this controversy one of the brothers, Marshall R. Sanguinet, died testate leaving a widow and descendants. In 1937 this controversy was compromised and settled by contract (referred to in the briefs and above as "Conveyance and Agreement;" hereinafter referred to as the 1937 contract) between the widow, six of his brothers and the descendants of the deceased brother. By this contract the interest of Eugene O. Sanguinet in the trust was divided as follows: (1) all of the income to his widow during her lifetime; (2) one-half his interest to his widow which carried with it, after her death, one-half of the income; (3) one-half of his interest to his brothers and descendants of the deceased brothers which carried

with it, after the widow's death, one-half of the income.

The widow, Clara Ann Sanguinet, died testate in 1952. Through her will, and by mesne conveyances, her interest in the Barnickel estate is now divided: two-thirds to Carrie-May Scott Jones, a niece who was reared in the Sanguinet home; one-third to George O. Jones and John R. Thomas as trustees for Carrie-May Scott Jones for her life with remainder over to her son, George O. Jones.

These appellants took the position in the trial court that the 1937 contract was void *ab initio*. This position was untenable and they pointedly abandon it in their brief. They also, as an alternative, took the position that if the contract was valid, it was unenforceable between them and those heirs at law of Eugene O. Sanguinet (descendants of Sanguinet brothers) who did not sign the contract. As we understand their position, they are saying that there are now descendants of Sanguinet brothers who did not exist when the 1937 contract was executed, and that the contract is not enforceable between appellants and those persons, because it is not binding upon the latter and, therefore, not binding upon appellants. Further, as we understand their position, they contended in the trial court, and contend here, that the contract is unenforceable because these new descendants *may, might or could* claim an interest in the Sanguinet share " * * * as purchasers under the Barnickel will * * * " (and not through their ancestor under the 1937 contract) *if* it be determined that the Associate's interest in the trust estate did not vest upon Mr. Barnickel's death and was contingent (therefore, inalienable) upon the Associate being alive when the trust terminated. We have determined the latter question and thereby eliminated the premise on which appellants' contention is based. So much for their position and contentions which we have related (at the expense of desirable brevity) for the purpose of putting their claim of error in proper perspective.

■ We have read and studied the pleadings carefully. The validity or enforceability of the 1937 contract is not raised as an issue by plaintiffs' petition to construe the will, nor made an issue by the pleadings of the two groups of defendants who would be directly concerned with the validity of the contract. While the petition alleges the existence of the contract and prays that the court determine whether the trustees should recognize it, no allegation is made that it is either valid or invalid; moreover, plaintiffs took the position at the trial, and take the same position in this court, that they raised no issue as to the validity of the contract. These appellants, by answer alleged that the contract was void as between them and descendants of Sanguinet brothers who might have a contingent interest, and claim such interest directly under the Barnickel will rather than by inheritance through their ancestor who did sign the contract. No issue was joined on this question by a pleading of either the plaintiffs or the other defendants. These descendants of Sanguinet brothers took the position in their pleadings that the interest of Eugene O. Sanguinet in the trust estate was vested, not contingent, and that they claimed by inheritance through their ancestor under the 1937 contract.

■ The trial court did not err in ruling that the validity of the 1937 contract was not an issue and that the contract be recognized by the trustees.

The plaintiffs appeal from that portion of the trial court's decree holding that successor trustees do not have the power to appoint a successor trustee whenever a vacancy occurs. All of the respondents and the other appellants, except appellants, the unknown heirs of Associates, agree in their briefs that the trial court erred in so holding. The question is not discussed in the brief of the last-mentioned appellants. That portion of the will requiring construction reads: "In the event of the death resignation disqualification or failure to qualify of any of said * * * trustees the remaining

two are authorized to select a third with the same powers as if appointed by this will." The trial court construed this provision " * * * to apply only to managerial and administrative powers and not to the power given to any two of the original Trustees to appoint a successor Trustee to fill a vacancy in office."

All three of the trustees appointed by the will qualified and served until 1935. In that year, Sears Lehmann, one of the original trustees, died, and the remaining two trustees, John S. Lehmann and Frederick W. Lehmann, appointed John V. Janes, husband of Genevieve Barnickel, as successor trustee. In January, 1962, while this suit was pending, Frederick W. Lehmann died. But during his lifetime he and the other two trustees, apparently in anticipation of his impending death, appointed The Boatmen's National Bank of St. Louis as his successor. Shortly after his death, John S. Lehmann and John V. Janes, the surviving plaintiffs-trustees, suggested this death and moved the appointment and substitution of the Bank as successor co-trustee. The motion was denied without prejudice, but the court of its own motion appointed the Bank as successor co-trustee pendente lite, and substituted it as a party plaintiff. We have related the trial court's construction of this provision and its decree. Plaintiffs sought in the trial court, and seek here, a modification of this decree to conform to their contentions that the power to appoint a successor trustee is not limited to two of the original trustees but that such power is granted also to successor trustees.

This language of the will is clear and unambiguous. As to the power of trustees to appoint a successor there is no manifestation of an intent on the part of the testator that that power be exercised only by trustees originally named. The will expressly provides that two of the named trustees may select a third " * * * with the same powers as if appointed by this will." Had testator intended that the powers of successor trustees include only management of the trust estate he could have said so, but he did not. The strong inference from the broad language used is that he intended that successor trustees have, as he said, *the same powers* as trustees originally named, including the authority to select·a successor. Scott on Trusts, Vol. II, p. 1478, § 196; Bakewell v. Mercantile Trust Co., Mo., 319 S.W.2d 600, 605 [4].

 We hold that successor trustees have all the powers as the trustees originally named and are authorized to select a successor when a vacancy occurs. In holding to the contrary the trial court erred, and the decree should be modified.

The case is remanded to the trial court with directions to modify its decree to conform with our ruling on the power of successor trustees to select a successor trustee. As so modified, the decree is affirmed.

All concur.